IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 5, 2009 Session

## RUDOLPH POWERS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. B-74909, -10, & -11; P-09407     Lee V. Coffee,  Judge**

---

**No. W2008-01346-CCA-R3-PC  - Filed February 18, 2010**

---

A Shelby County Criminal Court jury convicted the Petitioner, Rudolph Powers, of aggravated rape and robbery accomplished with a deadly weapon against the victims Vivian Brodie and Carol Boone, and the Petitioner was sentenced to life imprisonment and twenty-five years respectively, which were to be served concurrently. A few months later, another Shelby County Criminal Court jury convicted the Petitioner of aggravated rape against victim Kris Brewer, and the trial court sentenced him to fifty years of imprisonment.  The Petitioner was ordered to serve his fifty-year sentence consecutively to his concurrent sentences of life imprisonment and twenty-five years.  Following a direct appeal and several collateral appeals, which were unsuccessful, the Petitioner filed a petition for post-conviction DNA analysis, which the post-conviction court denied.  On appeal, the Petitioner contends that the post-conviction court erred in denying his petition for post-conviction DNA analysis.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Kemper B. Durand and M. Casey Shannon, Memphis, Tennessee, and Craig M. Cooley and Peter J. Neufeld New York, New York, for the Petitioner-Appellant, Rudolph Powers.

Robert E. Cooper, Jr.,  Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and John Wheeler Campbell, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Procedural History.**  This Court affirmed the trial court's judgment regarding the Petitioner's convictions and sentences in the case involving the victims Vivian Brodie and Carol Boone on direct appeal.  See State v. Rudolph Powers, C.C.A. No. 6, at 7 (Tenn. Crim.

App., at Jackson, Dec. 30, 1982), perm. to appeal denied (Tenn. Mar. 14, 1983).  Because the facts of this case are relevant to this appeal, we include a synopsis of the trial testimony from this court's decision on direct appeal:

Two teenaged Carter High School students testified that they were walking to one of the girls' father's home at approximately 4:00 p.m. on Saturday, May 10, 1980.  After leaving the Southgate Shopping Center, the friends took a shortcut on a path through an overgrown field.  A man rapidly approached them from the rear and asked to accompany them.  When they refused his request and increased their pace, the man overtook them, grabbed one girl around the neck, put a knife with a broken point to her throat, and told her he would kill her if she didn't tell her friend to stop and come with him.  He demanded money from them but was told they had none to relinquish.  He then demanded sex, undressed one girl, and ordered the companion to disrobe.  The frightened girls complied with the demands of the knife-wielding attacker who then, while still clutching the weapon, penetrated one girl vaginally with his penis.  When he noticed the second girl observing the rape, the assailant ordered the witness to turn her back to the activity.

After raping his victim, the man appeared unsure of his next course of action.  He took a sack of clothes and Mother's Day gifts which the second girl had purchased at a store in Southgate Shopping Center and ordered the girls to wait twenty-five (25) to thirty (30) minutes before they left.  The girls then saw their attacker run down the path toward the railroad track.

The two victims dressed and, after reaching their original destination, reported the rape and robbery to the police.  The attacker was described as a twenty-six (26) or twenty-seven (27) year old black male with a dark complexion and a short afro.  He was about five-six and weighed about a hundred and fifty or fifty-five pounds. He was wearing blue knit pants, a black T-shirt with faded white lettering, and black desert boots.  One girl also noticed that the assailant wore a bracelet with a silver heart which appeared to have the name "Michael" engraved in cursive writing on it.  Both of the young women remembered that the man wore a mustache but neither could recall positively  whether or not he also had a beard.  The girls also testified at trial that the black desert boots they had described were laced with red laces.  Their statements to police did not contain such a description, however.

The young woman who had been raped was eventually transported to the Rape Crisis Center for examination.  Teresa Paulette Sutton, a forensic serologist at the University of Tennessee Toxicology Lab examined the slides, swabs, and other evidence collected by the Center and sent to her.  She

-2-

testified that spermatozoa were present on the slides, on the vaginal swabs taken of the victim, and possibly on the victim's underwear. Tests conducted on the swabs and underwear also revealed the presence of acid phosphatase which is found in seminal fluid.

One week later, on May 17, 1980, appellant was arrested and taken to the office of Sergeant J.C. Noe. Noe testified that he observed a silver, heart-shaped bracelet on Powers' wrist. The name "Michael" appeared to have been engraved on the jewelry but a closer examination revealed the name to be "Michelle".[sic]

Later that evening, the two crime victims identified appellant in a police lineup as the man who had attacked them the previous Saturday. Furthermore, both girls identified Powers in court as their assailant and stated that they were positive about their identifications.

On May 18, 1980, appellant consented to a police search of his apartment. A pair of black desert boots with red shoelaces was found under the bed and a knife with a broken-pointed blade was discovered under a chair cushion. At trial, the items were identified as those used by Powers in the May 10th [sic] assault.

The defendant presented a number of relatives as witnesses in an attempt to establish an alibi. The defense contended the appellant was at his mother's apartment and with his brother-in-law and niece at the time the rape and robbery [were] alleged to have occurred.

In rebuttal, the State introduced the testimony of two South Side High School students who claimed to have had a criminal encounter with Rudolph Powers. The two girls testified that they had been walking through the grassy field behind the Southgate Shopping Center at approximately 4:30 p.m. on Saturday, March 22, 1980. There they encountered appellant who attempted to initiate a conversation with them. They ignored the stranger, however, and proceeded on their way. When the girls heard rocks moving, they turned to see Powers running at them. He grabbed one girl around the neck and put a knife to her throat, threatening bodily injury if she did not summon her companion. After leading the girls to a flat area, he demanded money and then, when no money was forthcoming, ordered them to undress. While he vaginally raped one of the teenagers, he told the other to turn her back to them. After completing the sexual assault, appellant appeared indecisive but told the girls not to dress until he departed. He then walked away in the direction of the railroad tracks.

Rudolph Powers, C.C.A. No. 6, at 3-5. Following this direct appeal, the Petitioner made several collateral challenges to his convictions, which were all unsuccessful. See, e.g., State v. Rudolph Powers, No. 02C01-9503-CR-00084, 1995 WL 695133, at *1 (Tenn. Crim. App., at Jackson, Nov. 22, 1995), perm. to appeal denied, (Tenn. May 6, 1996) (affirming denial of post-conviction relief); Rudolph Powers v. Neil Rone, Warden, No. 02-C-01-9208-CR-00191, 1993 WL 194008, at *1 (Tenn. Crim. App., at Jackson, June 9, 1993), perm. to appeal denied (Tenn. Oct. 4, 1993) (affirming summary dismissal of post-conviction relief); State v. Rudolph Powers, C.C.A. No. 82, 1989 WL 105683, at *1 (Tenn. Crim. App., at Jackson, Sept. 13, 1989), perm. to appeal denied, (Tenn. Nov. 27, 1989) (affirming denial of fifth petition for post-conviction relief).

On December 13, 2007, the Petitioner filed a petition for post-conviction DNA analysis. The State filed a response opposing DNA analysis and requesting that the petition be dismissed. Following a hearing on the petition which consisted only of counsels' arguments, the post-conviction court denied the petition. On February 28, 2008, the post-conviction court filed a written order denying the petition, and the Petitioner filed a timely notice of appeal.

**Post-Conviction Hearing.** At the February 5, 2008 hearing on the motion for DNA testing under the Post-Conviction DNA Act, the Petitioner's attorney reminded the court that Kris Brewer and Donna Wilson testified against the Petitioner in the trial involving the victims Vivian Brodie and Carol Boone, and that Brodie and Boone testified against the Petitioner in the trial involving the victims Brewer and Wilson, in order to prove identity. Specifically, the Petitioner's attorney requested that Brodie's underwear be subject to DNA testing. He also argued that the Petitioner would seek to vacate his convictions in the Brewer/Wilson case if exculpatory results were obtained in the Brodie/Boone case. The Petitioner's attorney further argued that the post-conviction court could not deny DNA testing based solely on the victims' identification of the perpetrator. Regarding the State's argument that Brodie had consensual sexual intercourse within the twelve hour period prior to her rape and that the Petitioner would be unable to prove that a single DNA profile was not from this consensual sex partner, the Petitioner's attorney asserted that if testing revealed two DNA profiles and both profiles excluded the Petitioner, then the results would establish the Petitioner's innocence. He also argued that if testing revealed a single DNA profile that matched a previously convicted sex offender in the DNA database, then this would also establish the Petitioner's innocence.

In addition, the Petitioner's attorney requested that the Court force the State to either produce the evidence or launch a comprehensive search for physical evidence from the Brewer/Wilson case. He explained the efforts that the Innocence Project, Inc. had already made in order to find this evidence:

The Innocence Project has spent thousands of dollars . . . hiring local investigators here to go to these agencies, and everybody is pointing the finger at every other agency. So we need assistance to find this evidence . . . .

In response, the State asserted that although subsections 2, 3, and 4 of the Post-Conviction DNA Act are met, the Petitioner failed to establish subsection 1, which requires a finding that "[a] reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis." See T.C.A. § 40-30-304(1). In reaching this conclusion, the State detailed all of the evidence against the Petitioner:

You have four separate individuals involved in this case on two different dates. All four of these, two victims and two witnesses, identified the defendant not from photospread but from an actual physical lineup.

One particular witness who I spent some time [talking about] in my Response . . . , her name is Carol Boone, told the police – and this was ten days before the defendant was arrested, in fact, . . . before he was even a suspect, [and Boone] describes the perpetrator as having a particular piece of jewelry on.

In fact, [Boone] said it was on his left wrist, it was a silver bracelet shaped like a heart and had the word "[Michael]" engraved on it. When the defendant was arrested he had a silver bracelet on his left wrist that was heart shaped and had the word "Michelle" engraved on it.

Also [Boone] described the weapon that the perpetrator used as being a folding pocket knife with the tip of the blade broken off. When the defendant was taken into custody ten days later he gave a consent to search his residence or his room, and officers found underneath a cushion of a seat in the room a pocket knife with a broken tip on one of the blades.

[Boone] also described the perpetrator as having black desert boots on. When his house was searched underneath the bed were black desert boots. This, as I stated, is detail that goes just beyond a photospread ID, but also has some substance to it that the State found to be compelling when considering the fact that [Boone] then saw him ten days later in a physical lineup and identified him.

The State also emphasized the fact that Brodie had consensual sexual intercourse in the twelve hour period prior to her rape. It asserted that if the results provided a DNA profile that did not match the Petitioner, then the profile would have to belong to the individual with

whom she had consensual sexual intercourse. Regarding the Petitioner's argument that the DNA results should be uploaded to the sex offender database, the State noted the limits of the Act:

> Now, the Court [is] not authorize[d] under the statute to go out and order more DNA testing of the victim or more DNA testing of someone she may have had sex with, or for that matter [place] the results into the CODIS database and see if you get a hit from somewhere else.
>
> In fact, the cases that I cite, including Sedley Alley, the Court of Appeals and the Supreme Court are very adamant about the fact that this stands on the facts alone, stands on the case alone, and does not authorize subsequent testing by the Court.

The State added that even if DNA testing produced exculpatory DNA results, "the State would have still proceeded on a prosecution, and there's a great likelihood that the result would not have been different."

Regarding the Petitioner's request for an order forcing the State to search for the missing evidence in the Brewer/Wilson case, the State argued that it was the Petitioner's responsibility, rather than the State's responsibility, to establish whether that evidence still existed. It also argued that under the DNA Act the Petitioner would not be exonerated in the Brewer/Wilson case if exculpatory results came back from the evidence in the Brodie/Boone case.

The Petitioner's attorney criticized Brodie's and Boone's identification of the Petitioner because the "the victims viewed the lineup simultaneously" and because the lineup was not sequential. In addition, regarding Brodie's consensual sex partner, he argued that "if you do get two profiles that don't match [the Petitioner], . . . [then] it's reasonably probable that the State would not have prosecuted [the Petitioner] in 1981, if DNA technology had been around at that time." The Petitioner's attorney also argued that "under the Federal Constitution, under Brady and under third party guilt issues if we do get a profile that excludes [the Petitioner] . . . , we should have a right to upload that [information] because it's potentially exculpatory evidence."

At the conclusion of the hearing, the court reviewed the four criteria under the Post-Conviction DNA Act that must be met in order for the petition to be granted. In the Brodie/Boone case, the court noted that the State would have prosecuted the Petitioner even if exculpatory DNA results had been obtained:

There's an indication that there may be multiple DNA donors of multiple sources of DNA if an examination were done of those items that apparently [are] still available [in] the Vivian [Brodie] case.

[The State has] indicated that even if the DNA analysis came back on the case and did not necessarily include the [Petitioner], that the State of Tennessee would still carry on a prosecution against [the Petitioner]. [The State has] indicated that there were four witnesses who made positive identifications of the [Petitioner] in a physical lineup, two victims, two separate other witnesses.

. . . .

The Opinion of the Court of Criminal Appeals [shows] that the facts and the circumstances and the allegations, the manner in which these rapes were committed were, . . . signature rapes. And the Court found that the Trial Court, Judge Bennett, was absolutely correct in allowing evidence to be testified to [by] these different victims and witnesses because of the striking similarities in these offenses.

In the Brewer/Wilson case, the court held that there was no evidence in existence that was in a condition that would permit DNA testing. The court stated that no representations had been made by either party that the evidence actually existed or could be located within a reasonable period of time, and the court concluded that it did not see "any reasonable probability that the evidence [would] be located after some twenty-six years." It added that the petition should be summarily dismissed because there was no proof that the evidence existed:

[T]he Court is not required to even conduct an evidentiary hearing unless there [are] some allegations that the State of Tennessee has acted in bad faith and purposely destroyed evidence to prevent it from being tested.

And [there are] no allegations here that the State has acted in bad faith, [instead the assertions are that the evidence in the Brewer/Wilson case cannot be located after approximately twenty-five or twenty-six years], and under Tennessee law the Court should summarily dismiss this petition on that case because there's absolutely no showing that evidence exists.

In response to the Petitioner's argument that the identifications made at the lineup were not reliable, the court held that this issue was waived:

Those are issues that could have been and should have been raised on direct appeal, could have been raised in post conviction[] if [the] appellate lawyer . . . felt that the trial lawyers . . . did not sufficiently represent the defendant when these cases were tried.

These cases have been affirmed on appeal, post convictions have been filed, those post convictions have been denied, and this Court does not have the authority or the legal ability to conduct a review of what could have or what should have been done in trial, or what should have been raised on previous post-conviction petitions.

This Court does not have the ability to judge hindsight as to what may have been or should have been done, and all issues as to whether or not the lineups, the physical lineups were constitutionally suspect, [are] matters that have either been previously determined or have been waived.

Ultimately, the court denied the Petitioner's request for DNA analysis:

[In the case involving the victim] Ms. [Brodie], this Court finds that the first prong of [the statute] cannot be met, and that [no] reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been attained through DNA analysis.

. . . .

[The Assistant District Attorney] indicated that the State undoubtedly would have gone forward based on four eyewitness identifications on two separate incidents and two separate victims, and based on the compelling or the strong corroborative evidence that was located at the time that the [Petitioner] was arrested.

And the Court finds, as the Court of Criminal Appeals found, that the evidence in this case is overwhelming; that the [Petitioner] is the person that committed these rapes against these two victims . . . .

The Court of Criminal Appeals looked at the sufficiency of the evidence and the Court found that beyond any doubt . . . that the evidence in this case was sufficient for a trier of fact to have concluded that [the Petitioner], in fact, did commit what the Court of Criminal Appeals called two "signature rapes" against these two young women.

So the Court cannot find that a reasonable probability exists, that the petitioner would not have been prosecuted or convicted if exculpatory results had been attained. The Court finds, therefore, under TCA [section 40-30-304 that] the DNA post conviction analysis has not been satisfied in regard to the rape involving Vivian [Brodie].

And the Court finds in regard to the rape involving Kris Brewer that there is no evidence that can be tested at this point. . . .

So under those findings . . . as [to] Ms. Brewer and Ms. [Brodie] the Court does not find that there is a reasonable probability that there will be a different result or that the State of Tennessee would not have prosecuted this defendant. The Court, for those reasons, does not feel that this DNA Petition For Post Conviction Relief is well taken, and the Court will deny this petition . . . .

The court filed its written order denying the petition for post-conviction DNA testing on February 28, 2008. In it, the court determined that the Petitioner failed to meet all of the criteria under the Post-Conviction DNA Analysis Act. The court also held that exculpatory DNA results would not undermine confidence in the outcome of the prosecution because of the overwhelming evidence against the Petitioner:

The court cannot ignore the evidence of the petitioner's guilt. Even if DNA results were found to belong to an unknown or a third party, those results would not prove exculpatory. The evidence against the defendant renders it virtually impossible for any person other than the defendant to have committed these violent crimes. Even if exculpatory results were produced, the confidence in the outcome of the prosecution of the petitioner's case would not be undermined; therefore, there is no reasonable probability that the State would not have prosecuted and convicted this defendant.

In addition, the court held that no scientific proof had been presented that DNA tests could be conducted on the evidence from the Brodie case:

It is not clear whether, after twenty-seven years, any meaningful testing could be done to determine DNA results in the Brodie case. The petitioner has failed to present any scientific testimony or proof that such testing could be accomplished. Accordingly, the reviewing court has to deny the petition.

The court also held that the lost evidence in the Brewer case was neither in existence nor could be reasonably found and therefore was not in a condition that DNA analysis might be conducted:

Both sides concede that there is no evidence presently available to test on the Brewer case. The rape kit apparently does not exist and there is no evidence available for DNA testing. The petitioner submits that the Innocence Project has spent "thousands" to locate evidence on the Brewer case. After diligent inquiry, the petitioner and the State of Tennessee cannot locate the evidence. There are absolutely no indications that this lost evidence might be located in the reasonably foreseeable future. The petitioner contends that, if the defendant is exonerated in the Brodie case, the conviction in the Brewer case would be knocked out or invalidated. That argument is simply not supported by the facts or the law. It is not reasonably probable that ordering the State of Tennessee to conduct additional comprehensive searches for missing or lost evidence would produce the rape kit in the Brewer case.

The reviewing court has to evaluate the petitioner's requests independently. Since the rape kit taken from Kris Brewer is no longer in existence, there is no evidence to test. Therefore, the petitioner cannot reach the minimum threshold requirement in the Brewer case.

## ANALYSIS

On appeal, the Petitioner argues that the trial court erred in ruling that he failed to fulfill the requirements of Tennessee Code Annotated section 40-30-304 in the Brodie and Brewer cases. Specifically, he requests DNA testing of Brodie's underwear and of the evidence in the Brewer case, even though he acknowledges that there is no evidence in existence to test. In the Brodie case, the Petitioner argues that there is a reasonable probability that he would not have been prosecuted or convicted if DNA testing reveals one or two DNA profiles that do not match him. He also contends that the State should be ordered to search for potential evidence in the Brewer case and that exculpatory DNA results in the Brodie case should be used to exonerate him in the Brewer case. Finally, he contends that the post-conviction court misapplied the "reasonable probability" standard in Tennessee Code Annotated section 40-30-304(1) by failing to show how exculpatory DNA results would have affected the jury, by using a sufficiency of the evidence standard rather than a reasonable probability standard, and by concluding that a victims' identification of the Petitioner was sufficient to deny DNA testing.

In response, the State contends that the Petitioner failed to establish each of the four criteria under section 40-30-304 for the cases involving Brodie and Brewer. It asserts that in the aggravated rape case involving Brodie, the Petitioner failed to establish that a reasonable probability existed that he would not have been prosecuted or convicted if the physical evidence did not contain his DNA, especially given the overwhelming evidence of his guilt and the fact that Brodie had consensual sexual intercourse within the twelve hour period prior to the rape. The State also asserts that in the aggravated rape case involving

Brewer, the Petitioner failed to prove there was any evidence in existence that could be tested for DNA. Finally, the State argues that the Post-Conviction DNA Act does not authorize an order requiring the State to search for evidence in the Brewer case and does not allow exculpatory evidence in one case to be used to exonerate a defendant in another case. We agree with the State.

The Post-Conviction DNA Analysis Act ("DNA Act") states that a petitioner convicted of specific offenses, including aggravated rape, "may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence." T.C.A. § 40-30-303. Because the DNA Act allows for a request of DNA analysis "at any time," this language overrides any general statute of limitation, regardless of whether a request for DNA testing was made at trial. Steven Craig Griffin v. State, No. M2008-00242-CCA-R3-PC, 2009 WL 564228, at *7 (Tenn. Crim. App., at Nashville, Mar. 5, 2009), perm. to appeal denied (Tenn. June 15, 2009) (citing T.C.A. § 40-30-303; Sedley Alley v. State, ("Alley II"), No. W2006-01179-CCA-R3-PD, 2006 WL 1703820, at *5 (Tenn. Crim. App., at Jackson, June 22, 2006), cert. denied, 548 U.S. 922, 126 S. Ct. 2975 (U.S. June 27, 2006) (No. 05-11733)). Under this Act, the trial court shall order DNA analysis after providing notice and an opportunity for the State to respond, if the following criteria are met:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;
>
> (2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;
>
> (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and
>
> (4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

T.C.A. § 40-30-304. "The absence of any one of the four statutory conditions results in the dismissal of the petition." Sedley Alley v. State, ("Alley I"), No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at *2 (Tenn. Crim. App., at Jackson, May 26, 2004), perm. to appeal denied (Tenn. Oct. 4, 2004).

Regarding the first factor in section 40-30-304, the petitioner must show "a reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis." T.C.A. § 40-30-304(1). "[F]or purposes of the Act, we must assume that DNA testing will reveal exculpatory evidence . . . ." Jack Jay Shuttle v. State, No. E2003-00131-CCA-R3-PC, 2004 WL 199826, at *5 (Tenn. Crim. App., at Knoxville, Feb. 3, 2004), perm. to appeal denied (Tenn. Oct. 4, 2004). This court noted that "[a] 'reasonable probability' of a different result exists when the evidence at issue, in this case potentially favorable DNA results, undermines confidence in the outcome of the prosecution." Sedley Alley, ("Alley II"), 2006 WL 1703820, at *14 (quoting Sedley Alley, ("Alley I"), 2004 WL 1196095, at *9). This court cannot ignore existing evidence when considering "potentially favorable DNA results." Sedley Alley, ("Alley I"), 2004 WL 1196095, at *9. In other words, "[t]he convicted defendant requesting post-conviction DNA analysis is not provided a presumption of innocence, and the reviewing court need not ignore the proof supporting the conviction." Sedley Alley, ("Alley II"), 2006 WL 1703820, at *14.

Because the post-conviction court is given considerable discretion in determining whether the Petitioner should be granted relief under the DNA Act, this court's scope of review is limited on appeal. See Jack Jay Shuttle, 2004 WL 199826, at *4. Accordingly, we will not reverse unless the post-conviction court's judgment is not supported by substantial evidence. Willie Tom Ensley v. State, No. M2002-01609-CCA-R3-PC, 2003 WL 1868647, at *4 n.2 (Tenn. Crim. App., at Nashville, Apr. 11, 2003) (citing State v. Hollingsworth, 647 S.W.2d 937, 938 (Tenn. 1983)). In determining whether to grant a Petitioner relief under the DNA Act, the post-conviction court should consider the following:

> [T]he evidence at trial and/or any stipulations of fact by the petitioner or his counsel and the state. In addition, the opinions of this court on either the direct appeal of the conviction or the appeals in any previous post-conviction or habeas corpus actions may provide some assistance. These sources provide the essential facts of the crime at issue and may be helpful to trial courts in their assessment of the merits of any claim.

Mark A. Mitchell v. State, No. M2002-01500-CCA-R3-PC, 2003 WL 1868649, at *4 (Tenn. Crim. App., at Nashville, Apr. 11, 2003), perm. to appeal denied (Tenn. Oct. 13, 2003).

**I. Victim Brodie.** In this case, the Petitioner requests DNA testing of the underwear recovered from Brodie. After reviewing the record, we conclude that even if the DNA results from this evidence do not match the Petitioner, there is no reasonable probability that the Petitioner would not have been prosecuted or convicted in light of the overwhelming evidence of his guilt presented at trial. We also agree with the post-conviction court that no proof was presented that the evidence from Brodie was in a condition that DNA analysis

could be conducted. Despite the limited record on appeal,[1] there is no showing that favorable DNA results would undermine confidence in the outcome of the prosecution. See Sedley Alley, ("Alley II"), 2006 WL 1703820, at *14 (quoting Sedley Alley, ("Alley I"), 2004 WL 1196095, at *9). The record shows that Brodie and Boone identified the Petitioner from a physical lineup shortly after his arrest and also identified him at trial. Prior to the lineup, Boone stated that the perpetrator had a heart-shaped silver bracelet engraved with the name "Michael," was wearing black desert boots, and had a pocket knife with a broken blade. At the time that the Petitioner was taken into custody, he was wearing a silver, heart-shaped bracelet engraved with the name of "Michelle." During a search of the Petitioner's home, the police recovered a pair of black desert boots with red laces and a pocket knife with a broken blade. As we have stated in previous opinions, the evidence against the Petitioner was overwhelming.

The record also confirms that Brodie had consensual sexual intercourse with at least one individual within the twelve hour period prior to the rape, which would have provided an additional source for the semen located on Brodie's underwear. Given these facts, favorable DNA results would not have exonerated the Petitioner since the DNA could have come from the consensual sex partner. Given the identifications of the Petitioner by Brodie and Boone, the corroborating physical evidence, and the alternate source of semen from Brodie's consensual sexual activity, there is not a reasonable probability that the State would not have prosecuted the Petitioner or that the jury would not have convicted the Petitioner, despite the Petitioner's alibi proof from family members. In his brief, the Petitioner asserts that the State failed to introduce proof at trial of Brodie's consensual sexual intercourse prior to the offense and implied to the jury that the semen from Brodie's underwear belonged to Petitioner. The State aptly responds to this claim by stating that "if DNA results favorable to [the Petitioner] had existed at the time of trial, then evidence of prior consensual sexual activity would have been probative and thus presented, for the trier of fact to consider in weighing the evidence of the defendant's guilt." We agree.

The Petitioner also argues that he should be exonerated if DNA testing reveals two DNA profiles that do not belong to him. This argument rests on the Petitioner's presumption that Vivian Brodie engaged in consensual sexual activity with only one individual prior to the offense. We agree with the State that no evidence in this record supports this presumption. In fact, the record merely shows that Brodie had at least one incident of consensual sexual intercourse within the twelve hour period prior to the rape. Given these facts, the presence of two DNA profiles that do not belong to the Petitioner would not

---

[1]Although the Petitioner on appeal filed an appendix containing numerous exhibits, which were presumably admitted at his trials, he failed to include copies of the transcripts from the Brodie/Boone trial or the Brewer/Wilson trial in the record.

exonerate him. We conclude that the Act does not allow for DNA testing under these circumstances.

The Petitioner also seems to suggest that if testing reveals DNA that does not belong to him he should be able to upload the DNA to the database to see if there is a match. However, in Sedley Alley, ("Alley II"), this court clearly concluded that a DNA database search is not permitted under the Act:

> In Alley I, this Court held that the "purpose of the Post-Conviction DNA Analysis Act is to establish the innocence of the petitioner and not to create conjecture or speculation that the act may have possibly been perpetrated by a phantom defendant." Alley, 2004 WL 1196095, at *9. The Act's reach is limited to the performance of DNA analysis which compares the petitioner's DNA to samples taken from biological specimens gathered at the time of the offense. The statute does not authorize the trial court to order the victim to submit new DNA samples years after the offense, nor does the statute open the door to any other comparisons the petitioner may envision. Earl David Crawford v. State, No. E2002-02334-CCA-R3-PC, 2003 WL 21782328, at *3 (Tenn. Crim. App., at Knoxville, Aug. 4, 2003), perm. to appeal denied, (Tenn. Dec. 22, 2003). This Court rejects any implied testing of third party individuals or the need to "run" DNA testing results through a DNA database for "hits." Indeed, other states have rejected requests to compare DNA profiles with state and national DNA databases as "add[ing] yet another layer of speculation." See Commonwealth v. Smith, 889 A.2d 582, 586, n. 6 (Pa. Super. Ct. 2005). . . . Any interest created by enactment of the Act created a limited interest of a defendant in establishing his/her innocence and did not create an interest in establishing the guilt of a speculative and unknown third party.
>
> . . . The results of DNA testing must stand alone and do not encompass a speculative nationwide search for the possibility of a third party perpetrator. Thus, the DNA analysis is limited to showing that the biological specimen did not belong to either the Petitioner or the victim.

Sedley Alley, ("Alley II"), 2006 WL 1703820, at *9.

Finally, the Petitioner contends that the post-conviction court misapplied the "reasonable probability" standard in Tennessee Code Annotated section 40-30-304(1) by failing to show how exculpatory DNA results would have affected the jury, by using a sufficiency of the evidence standard rather than a reasonable probability standard, and by concluding that the victims' identification of the Petitioner was sufficient to deny DNA testing. We first note that the post-conviction court did, in fact, consider how exculpatory

-14-

DNA results would have affected the jury. In its February 28, 2008 written order denying DNA analysis, the court clearly determined that even with exculpatory DNA evidence, there was no reasonable probability that the Petitioner would not have been convicted:

> The court cannot ignore the evidence of the petitioner's guilt. Even if DNA results were found to belong to an unknown or a third party, those results would not prove exculpatory. The evidence against the defendant renders it virtually impossible for any person other than the defendant to have committed these violent crimes. Even if exculpatory results were produced, the confidence in the outcome of the prosecution of the petitioner's case would not be undermined; therefore, there is no reasonable probability that the State would not have prosecuted and convicted this defendant.

The Petitioner also argues that the post-conviction court misapplied the "reasonable probability" standard in Tennessee Code Annotated section 40-30-304(1) by using a sufficiency of the evidence standard rather than a reasonable probability standard. The aforementioned section from the post-conviction court's written order shows that it did not misapply the "reasonably probability" standard. Although the court referenced the sufficiency of the evidence standard when discussing the overwhelming evidence of the Petitioner's guilt at the conclusion of the hearing, the aforementioned excerpt shows that the court understood that "[a] 'reasonable probability' of a different result exists when the evidence at issue, in this case potentially favorable DNA results, undermines confidence in the outcome of the prosecution." Sedley Alley, ("Alley II"), 2006 WL 1703820, at *14 (quoting Sedley Alley, ("Alley I"), 2004 WL 1196095, at *9). The Petitioner also argues that the post-conviction court misapplied the "reasonable probability" standard by concluding that the victims' identification of the Petitioner was sufficient to deny DNA testing. This court has stressed that DNA analysis should not be denied solely based on the identification of the Petitioner by a witness or a victim:

> [T]he Act requires the trial court to assume that the DNA analysis will reveal exculpatory results in the court's determination as to whether to order DNA testing . . . . The Act was created because of the possibility that a person has been wrongfully convicted or sentenced. A person may be wrongly convicted based upon mistaken identity or false testimony. Thus, the fact that the victim identified the petitioner as the perpetrator should not provide a basis for denying testing.

Jack Jay Shuttle, 2004 WL 199826, at *5 (quoting Ricky Flamingo Brown, Sr., v. State, No. M2002-02427-CCA-R3-PC, 2003 WL 21362197, at *2 (Tenn. Crim. App., at Nashville, June 13, 2003) (Tipton, J., concurring), perm. to appeal denied (Tenn. Oct. 6, 2003). However, the record in this case clearly shows that the post-conviction court did not rely on merely the victims' identification in determining that there was no reasonable probability that the

-15-

Petitioner would not have been prosecuted or convicted if exculpatory DNA results had been obtained. Instead, as we previously discussed, the court gave great weight to the fact that "the evidence in this case [was] overwhelming."

**II. Victim Brewer.** The Petitioner argues that the post-conviction court erred in ruling that he failed to fulfill the requirements of Tennessee Code Annotated section 40-30-304 in the Brewer case as well. He requests DNA testing of evidence from the Brewer case, even though he acknowledges that there is no evidence in existence to test. We conclude that the evidence is not "still in existence," and therefore is not "in such a condition that DNA analysis may be conducted." See T.C.A. § 40-30-304(2). The Petitioner also contends that the State should be ordered to search for potential evidence in the Brewer case and that exculpatory DNA results in the Brodie case should be used to exonerate him in the Brewer case. We agree with the State's argument that the Post-Conviction DNA Act does not allow for either of these claims. Under section 40-30-304, the court shall order DNA analysis if each of the four criteria are met. See T.C.A. § 40-30-304. Since the evidence is not still in existence in the Brewer/Wilson case, the Petitioner's claim for DNA testing must be denied. See id. § 40-30-304(2); Ashad R.A. Muhammad Ali, a/k/a Louis Webb v. State, No. M2005-01137-CCA-R3-PC, 2006 WL 1626652, at *3 (Tenn. Crim. App., at Nashville, June 2, 2006) (affirming the post-conviction court's dismissal of the petition for DNA testing because the evidence could not be found); Waldo Wiggins, Jr. v. State, No. W2004-02397-CCA-R3- CO, 2005 WL 3059437, at *9 (Tenn. Crim. App., at Jackson, Nov. 10, 2005), perm. to appeal denied (Tenn. Mar. 20, 2006) (affirming the post-conviction court's denial of DNA testing where the sample from the gun was consumed during Tennessee Bureau of Investigation testing). Accordingly, substantial evidence supports the post-conviction court's dismissal of the petition for DNA analysis.

## CONCLUSION

Upon review of the record, the post-conviction court did not err in denying the Petitioner's request for DNA analysis. The judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE