J-S05015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ABDULLAH HANEEF IBN-SADIIKA | : | |
| | : | |
| Appellant | : | No. 10 WDA 2022 |

Appeal from the PCRA Order Entered December 14, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0010761-1984

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ABDULLAH HANEEF IBN-SADIIKA | : | |
| | : | |
| Appellant | : | No. 11 WDA 2022 |

Appeal from the PCRA Order Entered December 14, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0011275-1984

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED:  April 28, 2023**

Appellant, Abdullah Haneef Ibn-Sadiika, appeals *pro se* from the post-conviction court's orders denying his petition for DNA testing under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

In 1983, Appellant was charged, in two separate cases, with various offenses, including criminal homicide and robbery, based on the following facts:

> [A]t about 9:00 p.m. on March 16, 1983, [Appellant] left the residence he was sharing with his girlfriend[, Crystal] Sanders[,] in Mount Oliver, Pennsylvania. … [Appellant] and Ms. Sanders had been experiencing financial difficulties[,] and [Appellant] informed [Ms.] Sanders that he was going to get some money and that he might have to kill someone to do it. [Appellant] returned home at approximately 2:00 a.m. with blood stains on one of his shoes and on a pair of black gloves. … [Appellant] was carrying a gym bag which contained a jar, a small white pearl box containing a set of pearl handled steak knives, two checks[,] each of which were the victim's personal checks made out to the [Appellant,] in which one of the checks the [Appellant's] name was spelled incorrectly, various amounts of foreign currency and collector coins, various gold necklaces, stickpins, rings and earrings, a few of which were engraved with the victim's initials.
>
> Testimony given by Ms. Sanders at trial provided that [Appellant] explained to her that the items in the gym bag were obtained from an elderly woman in the Homewood area of Pittsburgh. He informed Ms. Sanders that he forced the victim to write out a second check because she misspelled his name on the first. … [Appellant] admitted to [Ms.] Sanders that he had stabbed the victim and left her to die in her bedroom because she could have identified him.

PCRA Court Opinion (PCO), 10/3/22, at 1-2 (citations to the record omitted).

On June 27, 1985, a jury convicted Appellant of first-degree murder and robbery. On February 7, 1986, he was sentenced for his murder conviction to life incarceration, without the possibility of parole, and to a consecutive term of 6 to 12 years' incarceration for his robbery conviction. On direct appeal, we affirmed Appellant's judgment of sentence, and our Supreme Court denied his subsequent petition for allowance of appeal. ***See Commonwealth v.***

J-S05015-23

*Haneef Ibn–Sadiika*, 526 A.2d 1233 (Pa. Super. 1987) (unpublished memorandum), *affirmed*, 532 A.2d 1137 (Pa. 1987).

On May 7, 2004, Appellant filed a petition for DNA testing pursuant to 42 Pa.C.S. § 9543.1.  Therein, Appellant requested that DNA testing be performed on cigarette butts found in the victim's apartment.  Ultimately, the PCRA court denied his petition, and this Court affirmed on appeal.  ***See Commonwealth v. Ibn-Sadiika***, No. 844 WDA 2005, unpublished memorandum at *1 (Pa. Super. filed Oct. 6, 2006).  We reasoned:

> The burden lies with the petitioner to make out a *prima facie* case that favorable results from the requested DNA testing would establish his innocence.  [***Commonwealth v. Smith***, 889 A.2d 582,] 584 [(Pa. Super. 2005)].  At [A]ppellant's trial, Dorothy Menges ("Menges"), a criminalist with the Allegheny County Crime Laboratory, testified that several cigarette butts were examined from the victim's apartment.  They were of two different brands, Kool and Carlton, and were removed from the bathroom toilet and a bedroom nightstand.
>
> Appellant's bald assertion that DNA testing of the cigarette butts, unavailable at time of trial and assuming exculpatory results, would establish his actual innocence of the crimes is frivolous and unsupported by the record.  Importantly, [A]ppellant was never linked to the cigarette butts; in fact, Menges testified that the blood group substances found on most of the cigarettes were consistent with the victim and her boyfriend, James Wilber.  Menges did not even have a sample of [A]ppellant's blood for comparison.
>
> ***
>
> On its face, the *prima facie* requirement set forth in [section] 9543.1(c)(3) and reinforced in [section] 9543.1(d)(2) requires an appellant to demonstrate that favorable results of the requested DNA testing 'would establish' the appellant's actual innocence of the crime of conviction.  …  In DNA as in other areas, an absence of evidence is not evidence of absence.

- 3 -

***

[H]ere, [A]ppellant's argument that DNA testing of the cigarette butts, assuming favorable results, would establish his innocence of the victim's murder is based on a faulty premise. Even if [A]ppellant's DNA were not found on the cigarette butts recovered from the victim's apartment, this in no way would exculpate him of her murder.

Appellant also asserts that "comparison of the DNA profile revealed by the DNA testing to [s]tate and national DNA-databases would reveal the identity of the likely killer." Appellant's argument is based on pure speculation. Even if, perchance, forensic testing of the cigarette butts produced a DNA profile that matched up with another individual in a state or national DNA database, that would not establish [A]ppellant's innocence, let alone reveal the identity of the likely killer. As [A]ppellant has failed to present a *prima facie* case that the anticipated evidence would establish his innocence, we will affirm the order of the PCRA court dismissing his petition.

***Id.*** at *6-9 (footnote, emphasis, citations, and some quotation marks omitted).

On October 8, 2021, Appellant filed another, *pro se* petition for DNA testing under section 9543.1. Appellant again sought testing of the cigarette butts, as well as hairs found in the victim's apartment. On December 14, 2021, the court issued an order, listing both underlying docket numbers, denying Appellant's petition. He filed timely, *pro se* notices of appeal at each of his two trial court docket numbers.[1]

On January 20, 2022, the court filed an order directing Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. However, the court's order did not notify Appellant that any issue not raised

_____

[1] This Court *sua sponte* consolidated Appellant's appeals.

- 4 -

in a timely-filed statement would be deemed waived.  **See** Pa.R.A.P.
1925(b)(3)(iv).  Thus, although Appellant did not comply with the court's
order to file a concise statement, we will not deem his issue(s) waived.  **See**
***Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.***,
88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) (holding that, "[i]n determining
whether an appellant has waived his issues on appeal based on non-
compliance with [Rule] 1925, it is the trial court's order that triggers an
appellant's obligation[;] … therefore, we look first to the language of that
order") (citations omitted).

In Appellant's *pro se* brief, he sets forth a "Statement of the Questions
Involved" section, but simply presents a lengthy argument, rather than any
clearly delineated issue(s).  **See** Appellant's Brief at 3-5.  We will overlook this
briefing error, as we can discern that Appellant is asserting that the court
erred by denying his motion for DNA testing of the cigarette butts and hairs
found at the crime scene because he "provided a strong[,] *prima facie* case of
actual innocence" to warrant that testing.  **Id.** at 3.

In the Argument section of his brief, Appellant contends that DNA testing
of the cigarette butts and hairs "would prove who smoked the cigarettes and
left behind the hairs and [who] certainly may be the unknown culprit who
killed the [victim] and will vindicate … Appellant[,] who has demonstrated at
the very least a *prima facie* case for actual innocence."  **Id.** at 9.  Appellant
further argues that he is entitled to DNA testing under the 'data bank theory,'
as explained in ***In re Payne***, 129 A.3d 546 (Pa. Super. 2015) (*en banc*).  **Id.**

at 8. "The 'data bank theory' postulates that any DNA results that are obtained from DNA testing that prove the presence of an unknown person could be run through state and federal data banks for a match, which, if successful would lead to the identification of a separate assailant." ***Payne***, 129 A.3d at 564 (citation omitted). According to Appellant, here, the DNA testing of the cigarette butts and hairs would identify another individual who was present in the victim's apartment, thereby exonerating Appellant.

We disagree. Initially, we note that, when examining the propriety of an order resolving a request for DNA testing, we employ the PCRA standard of review. ***See Commonwealth v. Conway***, 14 A.3d 101 (Pa. Super. 2011). "On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error." ***Commonwealth v. Nero***, 58 A.3d 802, 805 (Pa. Super. 2012) (citation omitted).

Section 9543.1 states, in pertinent part:

**(a) Motion.--**

(1) An individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

\*\*\*

(3) A request for DNA testing under this section shall be by written petition and shall be filed with the clerk of courts of the judicial district where the sentence is imposed.

(4) DNA testing may be sought at any time if the motion is made in a timely manner and for the purpose of demonstrating the

applicant's actual innocence and not to delay the execution of sentence or administration of justice.

***

(6) The motion shall explain how, after review of the record of the applicant's trial, there is a reasonable possibility if the applicant is under State supervision, or there is a reasonable probability if the applicant is not under State supervision, or after review of the record of the applicant's guilty plea there is a reasonable probability, that the testing would produce exculpatory evidence that would establish:

(i) the applicant's actual innocence of the offense for which the applicant was convicted;

42 Pa.C.S. § 9543.1(a)(1)-(6)(i).

We first address Appellant's request for DNA testing of the cigarette butts. As discussed *supra*, this Court has already affirmed the denial of Appellant's 2004 request for such DNA testing, concluding that the absence of Appellant's DNA on the cigarette butts would not establish his actual innocence. **See Ibn-Sadiika**, No. 844 WDA 2005, unpublished memorandum at *6-9. Aside from citing **In re Payne**, Appellant provides no discussion of any intervening circumstances or legal decisions that would permit us to re-evaluate his request for DNA testing of the cigarette butts. Although he avers that **In re Payne** "changed the entire legal thinking concerning the DNA data base theory," he provides no elaboration on this bald claim. Appellant's Brief at 8. Furthermore, we previously examined and rejected Appellant's speculative argument that a comparison of DNA found on the cigarette butts to state and national DNA databases would reveal the identity of the true killer in this case. **See Ibn-Sadiika**, No. 844 WDA 2005, unpublished

memorandum at *8-9. Therefore, Appellant's argument concerning the DNA testing of the cigarette butts has been previously litigated and does not warrant post-conviction relief. **See** 42 Pa.C.S. § 9543(a)(3) (stating that, to be eligible for PCRA relief, the petitioner must prove, *inter alia*, that the claim has not been previously litigated).

In regard to Appellant's request for DNA testing of the hair, he has failed to demonstrate that his motion is timely.

> "Section 9543.1(d) requires the petitioner to make a timely request for DNA testing." [**Commonwealth v.**] **Walsh**, 125 A.3d [1248,] 1254-55 [(Pa. Super. 2015)]. "In analyzing timeliness for purposes of Section 9543.1(d)(1)(iii), the court must consider the facts of each case to determine whether the applicant's request for post-conviction DNA testing is to demonstrate his actual innocence or to delay the execution of sentence or administration of justice." **Id.** at 1255.

> \*\*\*

> In [**Commonwealth v.**] **Edmiston**[, 65 A.3d 339 (Pa. 2013), *overruled on different grounds by* **Commonwealth v. Small**, 238 A.3d 1267 (Pa. 2020)], the defendant was sentenced in 1989 to death for the murder of a two-year-old girl. **Edmiston**, 65 A.3d at 342-44. After unsuccessfully filing two PCRA petitions, the defendant in 2009 — more than 19 years after his conviction — filed a petition for post-conviction DNA testing. **Id.** at 344. In deeming the petition untimely, our Supreme Court highlighted that the defendant did not seek additional DNA testing at trial; or in 2002, when the post-conviction testing provisions were enacted; or in his second PCRA petition. **Id.** at 357-58. The Supreme Court concluded:

> > [Edmiston's] guilty status has not changed since his 1989 conviction; advances in technology allegedly occurring after that date do not explain why he, if truly innocent, did not seek immediate testing, or, at the very least, testing available as technology improved during the intervening

years, rather than languishing on death row, all the while being supposedly innocent.

*Id.* at 358.

Similarly, in **Walsh**, the defendant was convicted of murder. His conviction was affirmed on appeal, and he subsequently filed three unsuccessful PCRA petitions. **Walsh**, 125 A.3d at 1251. In 2014, more than 10 years after his conviction, he filed a petition for post-conviction DNA testing, which the trial court denied. **Id.** On appeal, we affirmed the trial court's determination that the petition was untimely. **Id.** at 1258. We observed that the evidence he sought to test was "discovered and available" before trial, when DNA testing was available, and further, he had not sought DNA testing in his PCRA petitions. **Id.** at 1257-58.

**Commonwealth v. Hardy**, 274 A.3d 1240, 1248-49 (Pa. Super. 2022), *appeal granted*, 289 A.3d 889 (Pa. 2022) (finding Hardy's motion for DNA testing was untimely where he did not explain why he did not immediately seek testing in 2002, when the testing provisions were enacted, but instead waited until 2020 when he filed his motion).

Here, as in **Edmiston** and **Walsh**, the hairs for which Appellant now requests DNA testing were known to him at the time of trial, as well as in 2002 when the DNA testing provisions were enacted. Nevertheless, Appellant waited nearly 20 years to file his present motion for DNA testing of that evidence. He does not explain why he did not seek DNA testing of the hairs sooner, or why he did not request testing of that evidence when he filed his

motion for DNA testing of the cigarette butts in 2004.  Thus, we conclude that he has not demonstrated that his request for DNA testing is timely.[2]

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/28/2023

---

[2] On February 8, 2023, Appellant filed with this Court a *pro se* "Application for Leave to File Original Process in the Supreme Court," seemingly requesting that the Pennsylvania Supreme Court take "immediate action" in his case. *See* Application, 2/8/23, at 1.  We hereby deny Appellant's motion, without prejudice to his right to seek relief with our Supreme Court.