**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Eric E. SMITH, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 3, 2005.

Filed Dec. 7, 2005.

Richard R. Pugh, Lancaster, for appellant.

Kelly M. Sekula, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

Before: DEL SOLE, P.J., KLEIN and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 Appellant Smith challenges the denial of his motion for postconviction DNA testing. Finding that appellant did not meet the standard of the postconviction

DNA testing statute, 42 Pa.C.S.A. § 9543.1, we affirm.

¶ 2 Appellant was convicted by jury on June 25, 2001 of the first degree murder of his girlfriend, whose nude body was found in the bedroom of her apartment with over thirty-five stab/cut wounds. Immediately after conviction, appellant was sentenced to life imprisonment without parole. On appeal, this Court affirmed the judgment of sentence, and our Supreme Court denied a petition for allowance of appeal. Appellant's judgment of sentence became final on or about March 27, 2003.

¶ 3 Appellant filed a motion for postconviction DNA testing on March 4, 2005, pursuant to 42 Pa.C.S.A. § 9543.1. Specifically, appellant sought DNA testing of the victim's fingernail clippings and of any biological material present on a liquor bottle and its sales receipt that were found close to the victim's body. The trial court dismissed appellant's motion on May 4, 2005, and this appeal followed.

¶ 4 Under a recently enacted provision of the Post Conviction Relief Act[1] (PCRA),

an inmate may seek forensic DNA testing of "specific evidence that is related to the investigation or prosecution" that resulted in his conviction. 42 Pa.C.S.A. § 9543.1(a). There are, however, several statutory requirements that a petitioner seeking postconviction DNA testing must meet. Most relevant to the case at bar, the petitioner must present a *prima facie* case that the requested DNA testing, assuming that it yields exculpatory results, would establish his "actual innocence" of the crime of which he was convicted. 42 Pa.C.S.A. § 9543.1(c)(3). If, after reviewing the record of petitioner's trial, the court determines that there is "no reasonable possibility that the [DNA] testing would produce exculpatory evidence that would establish the [petitioner's] actual innocence", the court shall not order the testing. 42 Pa. C.S.A. § 9543.1(d)(2).[2]

¶ 5 Invoking section 9543.1, appellant in the present case asserts that absence of his DNA from the victim's fingernail clippings would establish his innocence of her murder.[3] He argues that, given the defen-

---

1. 42 Pa.C.S.A. §§ 9541–46.

2. The relevant text of the statute is the following:

    (a) Motion.—
    (1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.
    . . .
    (c) Requirements.—In any motion under subsection (a), under penalty of perjury, the applicant shall:
    . . .
    (3) present a prima facie case demonstrating that the:
    (i) identity of or the participation in the crime by the perpetrator was at issue in

the proceedings that resulted in the applicant's conviction and sentencing; and
    (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:
    (A) the applicant's actual innocence of the offense for which the applicant was convicted;
    . . .
    (d) Order.—
    . . .
    (2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:
    (i) would establish the applicant's actual innocence of the offense for which the applicant was convicted; 42 Pa.C.S.A. § 9543.1

3. In his motion, appellant also sought DNA testing of any biological material present on a liquor bottle and sales receipt that were found

sive wounds on the victim's hands and fingers, it is likely that her assailant's DNA will be found on her fingernail clippings. Appellant further suggests that the presence of DNA from a third party, presumably the assailant, on the victim's fingernail clippings will implicate that third party and exculpate appellant of the murder. The trial court rejected appellant's reasoning. In this appeal, appellant avers that the trial court erred by applying too rigorous and too narrow a standard in considering his motion for DNA testing.[4]

¶ 6 The issue raised by appellant is one of statutory interpretation, a question of law. Therefore, our standard of review is *de novo* and our scope is plenary. *Commonwealth v. Kennedy*, 583 Pa. 208, 876 A.2d 939, 943 n. 3 (2005); *Sternlicht v. Sternlicht*, 583 Pa. 149, 876 A.2d 904, 908 (2005). A bedrock rule of statutory interpretation is that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). With this principle in mind, we look to the text of the statute and then to controlling precedent to determine the appropriate standard by which the court must consider a motion for postconviction DNA testing.

¶ 7 From our analysis of the text of the postconviction DNA testing statute, we conclude that the legislature delineated a clear standard—and in fact delineated certain portions of the standard twice. Under section 9543.1(c)(3), the petitioner is required to present a *prima facie* case that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime. Under section 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish petitioner's actual innocence. From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a *prima facie* case that favorable results from the requested DNA testing would establish his innocence. We note that the statute does not require petitioner to show that the DNA testing results would be favorable. However, the court is required to review not only the motion, but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence that would establish petitioner's actual innocence. We find no ambiguity in the standard established by the legislature with the words of this statute.[5]

near the victim's body. Citing *Commonwealth v. Heilman*, 867 A.2d 542 (Pa.Super.2005), the trial court denied the motion to subject these items to testing, as they were not linked to appellant at trial. Appellant does not develop in any way an argument to this Court concerning testing of these items. Therefore, the issues surrounding these items are waived and we do not address them further. *See Commonwealth v. Clayton*, 572 Pa. 395, 402–03, 816 A.2d 217, 221 (2002) (stating that "it is a well settled principle of appellate jurisprudence that undeveloped claims are waived and unreviewable on appeal").

4. In addition, appellant insists, without further explanation, that the trial court misapprehended his argument for testing. We see no indication that the trial court did not clearly comprehend and thoroughly analyze appellant's arguments.

5. Appellant's brief suggests the following statutory standard for section 9543.1: the court should determine whether favorable DNA testing results, if they had been presented to the original fact-finder, would have created reasonable doubt and thereby led to a verdict of not guilty. Appellant's interpretation ignores the plain meaning of the text of the statute and is therefore rejected.

¶ 8 Few cases involving the interpretation of the postconviction DNA testing statute (42 Pa.C.S.A. § 9543.1) have been presented to this Court. The most relevant precedent for the case at bar is another criminal homicide case, *Commonwealth v. Heilman*, 867 A.2d 542 (Pa.Super.2005), *appeal denied*, 583 Pa. 669, 876 A.2d 393 (2005). The victim in *Heilman* was a prostitute who had been picked up by the appellant-defendant and then was beaten and shot at close range. The appellant-defendant sought DNA testing of biological samples taken from the victim, including fingernail cuttings; hair; and vaginal, rectal and oral smears, as well as testing of two condoms and a denture found in the same area as the victim's body. *Id.* at 545–46. Heilman argued that absence of his DNA from these samples would prove his innocence of the murder. The trial court held, and this Court affirmed, that the petitioner's premise was faulty.

¶ 9 The panel held that Heilman did not—and on the facts of the case could not—make a *prima facie* case that the absence of his DNA from the victim's biological samples and from items found at the crime scene would establish his innocence of criminal homicide. *Id.* at 546–47. Heilman presented little more than a bald assertion that the absence of his DNA from the crime scene would establish his innocence—but bald assertions do not constitute a *prima facie* case. The panel based its conclusion on the statutory text: "[o]n its face, the *prima facie* requirement set forth in § 9543.1(c)(3) and reinforced in § 9543.1(d)(2) requires an appellant to demonstrate that favorable results of the requested DNA testing '*would establish*' the appellant's actual innocence of the crime of conviction." *Heilman*, 867 A.2d at 546–47. Relying on this standard, the panel upheld the trial court's decision to deny testing because Heilman had not presented a *prima facie* case that the antici-pated evidence would establish his innocence. *Id.*

¶ 10 In the case at bar, the trial court's Opinion reveals that it not only used the correct statutory standard in evaluating appellant's motion but also properly relied on the binding precedent of *Heilman*. *Id.* The similarities in factual circumstances and legal arguments between *Heilman* and the case at bar are readily apparent. As in *Heilman*, the exculpatory evidence that appellant seeks is an absence of his DNA from the victim's fingernails. Appellant's *prima facie* case for the significance of that evidence fails for the same reason as Heilman's case failed: even if DNA testing were to generate the result that appellant anticipates—absence of his DNA from the victim's fingernails—this would not establish his innocence of her murder.

¶ 11 Appellant's entire argument depends upon an assumption for which there is no evidence in the record, *i.e.* that the victim scratched her assailant, thereby acquiring fragments of skin or droplets of blood from the assailant on her fingernails. Based on this assumption, appellant contends that the DNA profile obtained by testing the victim's fingernails will identify her assailant. In the absence of supporting evidence, we cannot accept appellant's premise. We have no evidentiary basis on which to infer that any DNA detected on the victim's fingernails was deposited there by her assailant during the fatal attack. Merely detecting DNA from another individual on the victim's fingernails, in the absence of any evidence as to how and when that DNA was deposited, would not exculpate appellant by pointing to a different assailant.

¶ 12 To support his speculation that the assailant's DNA was deposited onto the victim's fingernails, appellant relies on the fact that the victim sustained defensive

wounds on her hands and fingers during the fatal attack by the knife-wielding assailant. From the defensive wounds, appellant infers that the victim tried to fight off her assailant by scratching him, thereby resulting in a deposition of the assailant's skin cells or blood on her fingernails. However, appellant's inference from the defensive wounds goes far beyond any testimony presented at trial. The forensic pathologist who conducted the autopsy of the victim's body testified that her defensive wounds indicated an attempt to protect the vital areas of her body, e.g. the neck, chest, and gut. N.T., 7/2/02, at 97, 100. In other words, according to the pathologist, "[i]t's better to be stabbed in the hands rather than those [vital] areas." Id. at 100. The testimony of neither the pathologist nor any other witness established that the victim attempted to fight off her assailant by scratching him.

¶ 13 Therefore, the premise on which appellant relies—that the victim had the opportunity to and did indeed scratch her assailant, such that his blood and/or skin cells were deposited onto her fingernails— is entirely speculative. In the face of such speculation, the absence of appellant's DNA cannot be meaningful and cannot establish his actual innocence of the murder. The statute does not contemplate the speculative type of argument advanced by appellant; rather it requires a *prima facie* case that the DNA results, if exculpatory, would establish appellant's actual innocence.

¶ 14 A similar result on different facts was recently reached in *Commonwealth v. Brooks,* 875 A.2d 1141 (Pa.Super.2005), where an appellant sought DNA testing of

blood and other biological tissues found on or near a victim killed by two gunshots. In *Brooks,* this Court held that failure to detect DNA at the crime scene would prove nothing, as it was highly unlikely that any biological evidence had been left behind at the scene by the perpetrator. *Id.* at 1146–47. In the present case, as in *Brooks* and *Heilman,* the trial court properly required that appellant satisfy the standard in section 9543.1(c)(3) by making a *prima facie* case, and not by simply asserting a speculative scenario.[6]

¶ 15 The trial court also properly interpreted the mandate of section 9543.1(d)(2) not to order DNA testing if, after reviewing the trial record, it determines that there is no reasonable possibility that the testing would produce exculpatory evidence that would establish appellant's actual innocence. Review of the trial record revealed to the trial court, and to us, overwhelming evidence to implicate appellant in the murder. Appellant was apprehended a few hours after the victim's body was found. The clothes he was wearing and the knife he was carrying were stained with blood of the same type as the victim. According to the testimony of the forensic pathologist who conducted an autopsy on the victim, the knife that appellant was carrying could have caused the wounds on the victim's body. Appellant claimed that he had been in the victim's apartment the night before her body was found, that he left for some time, and that when he returned to the apartment later that night he found her dead body. He further claimed that he picked up the knife from the floor next to her body and carried it with him, that her blood stained his clothing when he came in contact with her dead body, and

---

**6.** Appellant attempts to distinguish *Heilman* by arguing that he seeks to compare the DNA profile that may be detected on the victim's fingernails with state and national DNA databases to identity the victim's killer. Far from

distinguishing *Heilman,* this argument only adds yet another layer of speculation to appellant's already speculative rationale for DNA testing.

that he then left the apartment knowing she was dead.

¶ 16 A witness for the Commonwealth testified that, when she saw appellant early on the day that the victim's body was found, he told her that he needed a ride out of the area and that he had "just caught a fucking body."[7] N.T., 7/2/01, at 5–8. This witness also testified that she saw blood on his shirt. Several other witnesses for the Commonwealth testified that the victim was involved in an abusive relationship with appellant and was fearful of him. Finally, witnesses testified that, although appellant had threatened to kill the victim if she ever left him, she had planned to move from her apartment within a few days. Semen found on the victim's leg matched that of appellant, although he told police that he did not have sexual intercourse with her the last night he saw her.[8] Given this evidence of record, appellant's argument that his innocence would be established by failure to find his DNA on the victim's fingernails is totally unsupportable.

¶ 17 We find no error by the trial court in its articulation or application of the standard required under the postconviction DNA testing statute. We therefore affirm.

¶ 18 Order affirmed.

---

**7.** The witness explained that in street terminology appellant's comment meant that he had killed somebody.

**8.** In contrast, appellant's motion for postconviction DNA testing states that he did have sexual intercourse with her on the day of her death.