## Commonwealth v. Hadjar

*Michelle P. Hutton,* for Commonwealth.

*Michael F. Gulp,* for defendant.

KOUDELIS, *J.,* June 14, 2006—

## PROCEDURAL HISTORY AND FACTS OF THE CASE

After a jury trial defendant was found guilty of possession with intent to deliver a controlled substance (PWID) and driving under the influence (DUI). Two months later the court sentenced the defendant to serve a term of incarceration of four to eight years (subject to certain mandatory minimums) and a concurrent sentence of 30 days to 23 months on the DUI. A direct appeal was perfected but no relief was secured.

Defendant filed a petition for post-conviction relief and asserts that he should be accorded the opportunity to adduce DNA evidence to undercut his conviction of PWID.

The facts of the case underscore the relationship of defendant's legal effort as it relates to his conviction. The authorities were contacted about a suspicious vehicle parked in a medial strip in Edgemont Township, Delaware County, Pennsylvania. State Trooper Rebecca Ladd was dispatched to investigate. She discovered defendant's vehicle partially perched and immobilized upon a tree stump, its taillights activated and the defendant asleep behind the wheel. As she knocked on the window of the car in an effort to rouse the defendant, she saw one opened and two unopened beer bottles in the car. Once she got the defendant to respond, Trooper Ladd witnessed specific manifestations of the defendant's inebriation; she arrested him and transported him to a local hospital

where blood was drawn on a consensual basis. The tests results, obtained later, revealed a blood alcohol content above the legal threshold.

After submitting himself for testing, the defendant was taken to the state police barracks for administrative processing and a preliminary arraignment. During his stay, defendant asked to use the toilet on three separate occasions. Each time the escorting trooper checked to assure that it was clear before the defendant was permitted to use the facility. The attending trooper discreetly kept watch over the defendant by holding the lavatory door open with a strategically placed foot. The first two trips to the toilet were uneventful; Trooper Ladd and Trooper Jeffrey Miller, respectively, provided escort. The third occasion was preceded by defendant's complaint of stomach pain. When Trooper Ladd came to shepherd the defendant, he expressed discomfiture with a female's assistance under the circumstances. Trooper Ladd had a male counterpart, Trooper James Fisher, attend the defendant's visit to the restroom. After checking the lavatory, Trooper Fisher allowed the defendant to enter. Trooper Fisher heard unusual noises (akin to the sound of cellophane or plastic being crumpled) emanating from the lavatory. Shortly thereafter, the expected flush was followed by the unexpected and unwelcome sounds of a clogged toilet. Trooper Fisher escorted defendant back to the processing room, and, armed with a plunger, re-entered the lavatory. He attacked the problem and plunged the toilet two or three times. When he removed the plunger he saw fecal matter along with an oblong package, white in color, about five inches in length and one inch in diameter, bobbing in the bowl. The trooper

fished the package from the toilet and carried it into the processing room where the defendant spontaneously reacted, "Do you think that was up my ass . . . do you think I'm gay?"

The package's contents were determined to be several hundred grams of cocaine. Defendant was subjected to a strip search. The results: defendant was found wearing under his slacks a lined bathing suit in addition to white brief-style underwear. The underwear was soiled and also marred with a red spot that appeared to be blood.

## LEGAL ANALYSIS

This leads to the issue. Defendant seeks performance of DNA testing[1] on the package retrieved from the facil-

---

1. The Post Conviction Relief Act contains express provision for DNA testing under certain circumstances. 42 Pa.C.S §9543.1 (Postconviction DNA testing). For purposes of this proceeding the following portions of the statute are germane.

"(a) Motion.

"(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

"(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered

ity in an effort to exculpate him from the PWID charge that emanated from its discovery and information flowing directly therefrom. While such scientific intervention may produce information regarding various users of the toilet, it does not meet the legal test which would mandate the employment of such technological applications.

---

on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

"(c) Requirements. In any motion under subsection (a), under penalty of perjury, the applicant shall:

"(1)(i) specify the evidence to be tested;

"(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

"(iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

"(2)(i) assert the applicant's actual innocence of the offense for which the applicant was convicted;

"(3) present a prima facie case demonstrating that the:

"(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish: (A) the applicant's actual innocence of the offense for which the applicant was convicted;

"(d) Order.

"(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence—that:

"(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted; ...

"(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice."

Should such testing be undertaken, it would not necessarily exonerate the defendant. If the DNA of others is identified on the wrapper, it does not prove anything other than that their DNA may be present because they too used the toilet at or around the time that defendant was being processed at the state police barracks.[2] See 42 Pa.C.S. §9543.1(c)(3)(ii)(A). In short, the DNA testing defendant seeks may be used to imply alternative theories to the defendant's guilt, however, it will not conclusively prove defendant's actual innocence. See *Commonwealth v. Heilman,* 867 A.2d 542, 546-47 (Pa. Super. 2005) (no entitlement to post-conviction DNA testing where petitioner fails to establish prima facie case that favorable results would establish petitioner's actual innocence). See also, 42 Pa.C.S §9543.1(c)(3) and (d)(2). Moreover, we are constrained by the trial record that underscores the propriety of the initial jury determination. Assuming the DNA results reflected the presence of genetic markers for other individuals, such evidence does not diminish the substantial body of information that would be consistent with attributing the package to the defendant. The defendant made several trips to the toilet. His last trip was punctuated by the sounds of crumpling plastic followed by the noises of a clogged toilet. These sounds were immediately followed by the unexplained appearance of the package in the toilet bowl. When Trooper Fisher appeared in the processing room and before there was any explanation of the package, the

---

2. A record was already made on this issue. Only one other person was being processed on that date that was processed before the suspicious floating packet was discovered.

defendant (in a pre-emptive and ill-advised effort to distance himself from the package) expressed that he was being falsely accused of carrying the package in his body. Then it was discovered that the defendant was wearing several layers under his pants and that there were telltale signs that might be consistent with his efforts to secrete his holdings.

We cannot find any possibility (let alone a reasonable possibility) that DNA testing would furnish information establishing defendant's actual innocence. *Commonwealth v. Smith,* 889 A.2d 582, 584 (Pa. Super. 2005) (no DNA testing justified if, after a review of the trial record, there is no reasonable possibility that the testing would demonstrate actual innocence). In the complete absence of a justification for further proceedings, the court may dismiss the petition without a hearing. *Commonwealth v. Jordan,* 772 A.2d 1011, 1014 (Pa. Super. 2001) (no absolute right to a PCRA hearing). See also, *Commonwealth v. Lambert,* 568 Pa. 346, 372-73, 797 A.2d 232, 248 (2001) (no right to hearing if underlying petition is meritless). Our decision to dismiss defendant's PCRA petition without convening a hearing was the only proper outcome.