J-S43042-15

2015 PA Super 222

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| THOMAS A. WALSH | |
| Appellant | No. 366 EDA 2015 |

Appeal from the PCRA Order January 9, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0004964-2003

BEFORE:  GANTMAN, P.J., PANELLA, J., and OLSON, J.

OPINION BY GANTMAN, P.J.:                    **FILED OCTOBER 23, 2015**

Appellant, Thomas A. Walsh, appeals *pro se* from the order entered in the Chester County Court of Common Pleas, which denied his motion for DNA testing pursuant to Section 9543.1 of the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts of this case are as follows.  On October 9, 2003, Appellant was released from prison on parole following his convictions for terroristic threats and harassment against his wife, Dinah Walsh ("Victim").  A condition of Appellant's sentence prohibited Appellant from having contact with Victim.  Additionally, on the date of his release, Appellant signed a form describing the rules and regulations of parole, which precluded Appellant

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

from having contact with Victim. Victim also had a protection from abuse ("PFA") order against Appellant at this time prohibiting Appellant from having any contact with her. On or about October 12, 2003, neighbors informed Victim they had seen Appellant driving through her neighborhood. Victim subsequently contacted the police and Appellant's parole officer to report Appellant's actions.

On October 15, 2003, at approximately 8:30 p.m., Appellant went to Victim's home and waited outside for her arrival. When Victim pulled into her driveway, Appellant opened her car door and said: "Go to my [parole] officer, will you, fucking bitch. You're going to die." (N.T. Trial, 5/6/04, at 87-88). Appellant then raised a claw hammer and began striking Victim as she screamed for help. In addition to striking Victim with the hammer, Appellant broke all of the windows and the sunroof of Victim's vehicle. Appellant and Victim's daughter, Amber Walsh, heard Victim's screams and ran outside to help her mother. Ms. Walsh saw Appellant strike her mother with the hammer on her eyebrow bone. Michael Carpenter, Ms. Walsh's boyfriend, came outside to help Victim as well and observed Appellant hitting her with a hammer. One of Victim's neighbors also intervened to help Victim. Ultimately, Victim was able to free herself from the vehicle and ran up the porch toward her home. As Victim climbed the steps to her porch, Appellant grabbed her shirt and struck Victim in the back of the head with the hammer. The assault continued until Ms. Walsh's dog came outside and

bit Appellant's arm.

Appellant left Victim's home and waited on the porch of a neighbor's home. Appellant was bleeding; and he informed his neighbor, Julie Jilek, that his daughter's dog had bitten him. Appellant also told Ms. Jilek he had an argument with Victim and beat her up. Appellant said he was upset because Victim had called his parole officer, and he "messed up big" and smashed the windows of Victim's car. (*Id.* at 4). Ms. Jilek informed Appellant that he could wait on her porch until the police came, but Appellant fled the scene before police arrived.

Trooper Aaron Botts arrived on the scene and pursued Appellant on foot. A neighbor spotted Appellant and alerted the police to his whereabouts. When Trooper Botts apprehended Appellant, Appellant disclosed that his injuries were the result of a dog bite. Appellant admitted he had "roughed [Victim] up a bit." (*Id.* at 24). Appellant also said he smashed the windows of Victim's vehicle with a hammer because he was angry that she had called his parole officer. Trooper Barry Searfoss also responded to the scene. Trooper Searfoss located the hammer in a neighbor's yard, secured it, and placed it into evidence.

Appellant sought medical treatment for his injuries. Trooper Joanne Dragotta spoke with Appellant at the hospital. Appellant told her: "I just lost it. I had enough of this shit." (*Id.* at 33). Appellant also stated: "[Y]ou know why I did this, because she called my PO and I knew that I was going

back to prison. I just want to go to prison now. Take me now." (*Id.* at 33-34). Appellant later said: "I just went off. You know why? Because she called my PO when I drove by the house. And my sister told me, she was looking for me, so I went there and boom, just went off. … I don't care if I get the lethal injection for this. I just flipped when I heard that bitch called my PO." (*Id.* at 34). Appellant made similar statements to Trooper David Kennedy the following morning at the police barracks.

The Commonwealth charged Appellant with attempted murder, aggravated assault, simple assault, possessing instruments of crime, terroristic threats, and related offenses. Appellant proceeded to a jury trial on May 6, 2004. The Commonwealth presented testimony/evidence from, *inter alia*, Victim, Amber Walsh, Michael Carpenter, Julie Jilek, the responding police officers, and Victim's medical providers. The Commonwealth also introduced the hammer as evidence. Appellant testified in his own defense that he felt "mania" and "up rise" on the night in question and simply lost control. Appellant claimed his actions were the result of withdrawal symptoms from medication he had been taking while he was in prison. Appellant admitted smashing all the windows and the sunroof in Victim's vehicle, but he denied that he ever struck Victim with the hammer.

Procedurally:

> On May 7, 2004, a jury found [Appellant] guilty of aggravated assault and multiple other crimes. [Appellant] is currently serving a thirteen (13) to thirty-seven (37) year prison sentence imposed on July 14, 2004. On

September 13, 2005, the Superior Court affirmed his judgment of sentence. On November 10, 2005, Appellant filed his first petition under the [PCRA]. [The PCRA court] dismissed this petition on August 14, 2006. The Superior Court affirmed on August 27, 2007. The Supreme Court denied Appellant's petition for allowance of appeal on May 27, 2008.

On July 16, 2008, Appellant filed a second petition under the [PCRA]. [The PCRA court] dismissed this petition on September 3, 2008. The Superior Court affirmed on April 7, 2009, and the Supreme Court denied Appellant's petition for allowance of appeal on November 2, 2009.

On September 24, 2012, Appellant filed his third PCRA petition. On October [4], 2012, after finding the petition to be untimely, [the PCRA] court issued an order informing Appellant of [the PCRA court's] intent to dismiss his petition without a hearing. Instead of responding to this notice in court, Appellant filed a notice of appeal in the Superior Court. On July 1, 2013, the Superior Court quashed his appeal…. Upon remand of the record to [the PCRA] court, [the court] again reviewed Appellant's PCRA petition. Finding his petition untimely, and no timeliness exception applicable, [the PCRA court] dismissed Appellant's third petition on August 27, 2013. The Superior Court affirmed on April 28, 2014.

Failing to obtain relief through these petitions, Appellant then turned to 42 Pa.C.S.A. § 9543.1 "Postconviction DNA Testing," and on November 7, 2014, filed a motion requesting that the hammer used in the attack on his wife be tested to see if [V]ictim's blood was present. The Commonwealth responded to Appellant's request on December 9, 2014, and Appellant filed his rebuttal to the Commonwealth's answer on December 18, 2014. On January 9, 2015, after finding that Appellant had failed to establish entitlement to DNA testing, [the court] denied his request.

(PCRA Court Opinion, filed on March 13, 2015, at 1-3) (internal citations omitted). Appellant timely filed a notice of appeal on January 29, 2015. On

J-S43042-15

February 3, 2015, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on February 13, 2015.

Appellant raises the following issues for our review:

> SHOULD TRIAL COUNSEL HAVE REQUESTED DNA RESULTS THAT WOULD ESTABLISH [APPELLANT'S] INNOCENCE?
>
> SHOULD TRIAL COUNSEL HAVE REQUESTED DNA RESULTS TO VERIFY AN INJURY UNKNOWN TO THE DEFENSE AND PRESENTED TO A JURY?
>
> SHOULD TRIAL COUNSEL HAVE REQUESTED [A] PRE-TRIAL [CONFERENCE]/SUPPRESSION HEARING CONCERNING TESTIMONY REGARDING INJURIES TO THE VICTIM, IN ORDER TO ESTABLISH INCONSISTENT STATEMENTS ON HOW THE VICTIM ACQUIRED [HER] INJURIES?
>
> SHOULD TRIAL COUNSEL HAVE REQUESTED DNA RESULTS THAT WOULD [HAVE] ESTABLISHED THAT THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE?
>
> IS THE PROSECUTION COMMITTING A ***BRADY***[2] VIOLATION BY CONCEALING DNA RESULTS?

(Appellant's Brief at 4).

"[T]he PCRA's one-year time bar does **not** apply to motions for the performance of forensic DNA testing under Section 9543.1." ***Commonwealth v. Brooks***, 875 A.2d 1141, 1146 (Pa.Super. 2005) (emphasis in original). Importantly, however, "Section 9543.1 cannot be used to raise extraneous issues not related to DNA testing in an effort to

---

[2] ***Brady v. Maryland***, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

- 6 -

avoid the one-year [PCRA] time bar." ***Commonwealth v. Gandy***, 38 A.3d 899, 905 (Pa.Super. 2012), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (internal citations omitted). ***See also Brooks, supra*** (explaining petitioner must raise claims unrelated to motion for post-conviction DNA testing separately in timely filed PCRA petition).

Instantly, the order on appeal implicates only the court's denial of Appellant's post-conviction request for DNA testing pursuant to Section 9543.1. Nevertheless, Appellant attempts to advance on appeal new issues outside his request for DNA testing. These issues, including Appellant's claims that trial counsel was ineffective for failing to request DNA testing sooner, are unreviewable at this juncture. ***See Gandy, supra***; ***Brooks, supra***. ***See also Commonwealth v. B. Williams***, 35 A.3d 44, 50-51 (Pa.Super. 2011), *appeal denied*, 616 Pa. 467, 50 A.3d 121 (2012) (stating petitioner who is unable to obtain DNA testing under Section 9543.1 can still pursue ineffective assistance of counsel claim based on failure to request DNA testing of evidence at trial, but only if PCRA petition is timely filed or otherwise meets statutory exception to timeliness requirements).[3] Thus, we will review only Appellant's challenge to the court's denial of his request for DNA testing, which is the sole issue properly before us for review.

---

[3] More than one year has elapsed since Appellant's judgment of sentence became final. Consequently, Appellant must satisfy one of the PCRA's enumerated timeliness exceptions to obtain review of a future PCRA petition. ***See*** 42 Pa.C.S.A. § 9545(b)(1).

Appellant argues the jury convicted him of two counts of aggravated assault based on the Commonwealth's theory that Appellant struck Victim in the head with a hammer. Appellant denies striking Victim with the hammer and maintains that he struck only the vehicle sunroof with the hammer, causing the glass to shatter and inflict Victim's injuries. Appellant claims Victim's testimony that Appellant struck her directly with the hammer is inconsistent with the medical records produced at trial showing Victim suffered only minimal wounds.[4] Appellant insists Victim's DNA is not present on the hammer. Appellant suggests the absence of Victim's DNA on the hammer would establish Appellant's actual innocence for aggravated assault. Appellant concludes the court erred by denying his request for post-conviction DNA testing, and this Court must reverse. We disagree.

Our standard of review in this case is as follows:

> Generally, the trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in Section 9543.1. We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm.

*B. Williams, supra* at 47 (internal citations omitted).

Requests for post-conviction DNA testing are governed by statute at

---

[4] Nothing in the record supports Appellant's contention that Victim's injuries were "minimal."

42 Pa.C.S.A. § 9543.1, which provides in pertinent part:

**§ 9543.1.  Postconviction DNA testing**

**(a)  Motion.–**

(1)   An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2)   The evidence may have been discovered either prior to or after the applicant's conviction.   The evidence shall be available for testing as of the date of the motion.  If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

*    *    *

**(c) Requirements.–**In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1)(i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

(iii)acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the

investigation of other crimes and may be used as evidence against the applicant in other cases.

(2)(i) assert the applicant's actual innocence of the offense for which the applicant was convicted; and

* * *

(3)    present a *prima facie* case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A)   the applicant's actual innocence of the offense for which the applicant was convicted;

* * *

**(d) Order.—**

(1)    Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted;

\* \* \*

**(f) Posttesting procedures.—**

(1) After the DNA testing conducted under this section has been completed, the applicant may, pursuant to section 9545(b)(2) (relating to jurisdiction and proceedings), during the 60-day period beginning on the date on which the applicant is notified of the test results, petition to the court for postconviction relief pursuant to section 9543(a)(2)(vi) (relating to eligibility for relief).

(2) Upon receipt of a petition filed under paragraph (1), the court shall consider the petition along with any answer filed by the Commonwealth and shall conduct a hearing thereon.

(3) In any hearing on a petition for postconviction relief filed under paragraph (1), the court shall determine whether the exculpatory evidence resulting from the DNA testing conducted under this section would have changed the outcome of the trial as required by section 9543(a)(2)(vi).

\* \* \*

42 Pa.C.S.A. § 9543.1.

Thus, under Section 9543.1(a):

The statute sets forth several threshold requirements to obtain DNA testing: (1) the evidence specified must be available for testing on the date of the motion; (2) if the evidence was discovered prior to the applicant's conviction,

- 11 -

it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency.

*B. Williams, supra* at 49 (citing 42 Pa.C.S.A. § 9543.1(a)(2)). *See also Commonwealth v. Perry*, 959 A.2d 932 (Pa.Super. 2008) (holding PCRA counsel was not ineffective for declining to pursue post-conviction DNA testing where technology for testing existed at time of trial, verdict came after January 1, 1995, and court had not refused request for funds for testing; consequently, appellant could not have met his threshold burden under Section 9543.1(a)(2)).

Additionally:

The text of the statute set forth in Section 9543.1(c)(3) and reinforced in Section 9543.1(d)(2) requires the applicant to demonstrate that favorable results of the requested DNA testing would establish the applicant's actual innocence of the crime of conviction. The statutory standard to obtain testing requires more than conjecture or speculation; **it demands a *prima facie* case that the DNA results, if exculpatory, would establish actual innocence**.

*B. Williams, supra* (emphasis added). *See also Commonwealth v. G. Williams*, 909 A.2d 383 (Pa.Super. 2006) (affirming dismissal of request for post-conviction DNA testing where appellant's identity as perpetrator was not at issue in rape case; appellant's theory of case at trial was that he had consensual sex with victim; because appellant's participation was confirmed,

DNA testing would not establish his innocence).

Significantly, in DNA testing cases, "an absence of evidence is not evidence of absence." **Commonwealth v. Heilman**, 867 A.2d 542, 547 (Pa.Super. 2005). **See also B. Williams, supra** (affirming trial court's denial of DNA testing where appellant failed to meet threshold requirements for DNA testing, under Section 9543.1(a)(2), and did not demonstrate *prima facie* case of "actual innocence"; even if appellant's DNA were not found on hat/wig, record contained overwhelming evidence of appellant's guilt including three unshakable eyewitnesses, appellant's confession, and appellant's access to weapon used in crimes); **Commonwealth v. Smith**, 889 A.2d 582 (Pa.Super. 2005), *appeal denied*, 588 Pa. 769, 905 A.2d 500 (2006) (affirming denial of request for post-conviction DNA testing where absence of appellant's DNA from victim's fingernails would not establish appellant's innocence of victim's murder; nothing in record supported appellant's claim that victim would have scratched her assailant leaving DNA evidence under her fingernails).

Further, Section 9543.1(d) requires the petitioner to make a **timely** request for DNA testing. **See** 42 Pa.C.S.A. § 9543.1(d)(1)(iii). In analyzing timeliness for purposes of Section 9543.1(d)(1)(iii), the court must consider the facts of each case to determine whether the applicant's request for post-conviction DNA testing is to demonstrate his actual innocence or to delay the execution of sentence or administration of justice. **Commonwealth v.**

***Edmiston***, 619 Pa. 549, 578, 65 A.3d 339, 357 (2013), *cert. denied*, ___
U.S. ___, 134 S.Ct. 639, 187 L.Ed.2d 423 (2013).  In ***Edmiston***, the court
convicted the defendant of first-degree murder, rape, statutory rape and
involuntary deviate sexual intercourse.  The defendant's convictions
stemmed from events that occurred on October 5, 1988, after the defendant
kidnapped the two-year-old victim and inflicted gruesome injuries on her
before ultimately murdering her and leaving her body in a wooded area.  On
October 5, 1989, a jury imposed a sentence of death for the defendant's
crimes.  On September 30, 2009, the defendant filed a motion for post-
conviction DNA testing.  In analyzing whether the defendant's request for
DNA testing was timely under Section 9543.1(d)(1)(iii), our Supreme Court
stated:

> Although the PCRA court did not make the requisite finding
> of timeliness, we see no need to remand for the court to
> do so because, as explained below, our own review of the
> record and circumstances surrounding [the defendant's]
> post-conviction DNA testing request leads to the
> conclusion that this motion was untimely as a matter of
> law and was forwarded only to delay further the execution
> of the sentence.  Notably, at the time of trial, [the
> defendant] indicated that he was satisfied with the DNA
> testing that had been conducted, and declined further
> testing.  Following conviction, as noted, the postconviction
> DNA testing provision was enacted on September 8, 2002.
> Thereafter, [the defendant's] review as of right under the
> PCRA concluded in 2004 with our decision in ***Edmiston
> II***,[5] without [his] seeking DNA testing.  Moreover, he did

---

[5] ***See Commonwealth v. Edmiston***, 578 Pa. 284, 851 A.2d 883 (2004)
("***Edmiston II***").

not seek such testing as part of his second PCRA petition (which caused his federal *habeas corpus* petition to be held in stasis, thereby causing further delay), or as part of the amendment or supplement to that petition. It was not until after his second PCRA petition was nearing completion that [the defendant] finally sought DNA testing.

**[The defendant] has known of the existence of physical evidence he now seeks to test since his trial over twenty years ago. From that time to the present he has been represented by counsel, who knew of the statute, the technology, and the evidence, and who were vigorously pursuing post-conviction relief on his behalf. Under such circumstances, courts should exercise a healthy skepticism when faced with requests for DNA testing.**

**This is especially true when, as here, careful examination of the record reveals that [the defendant] is not a likely candidate to be exonerated by DNA testing.**

\* \* \*

Given [the vast] evidence [against the defendant], it is not surprising [he] declined DNA testing at the time of trial, following the inability of the preliminary, pre-trial DNA tests to identify or inculpate [the defendant]; a decision to seek further testing, of course, could have sealed [the defendant's] fate. That fact, in turn, is probative of the delay and purpose of [the defendant's] belated request for DNA testing, forwarded only as his serial PCRA petition was approaching conclusion. …

> The statute limits post-trial testing for very salient reasons: If post-trial testing were routinely available, few would seek pre-trial testing; it would behoove counsel to go to trial without testing, then seek DNA testing if convicted, there being nothing but an up-side to a convicted client. DNA testing that is available cannot become after-discovered evidence, and cannot be treated as a second chance lottery ticket.

- 15 -

\*   \*   \*

> The PCRA court also spoke of "advances in technology," but as the Commonwealth notes, the statute does not make advances in technology an excuse for failing timely to request DNA testing. The statute recognized that the testing available at the time of its enactment was of sufficient reliability that defendants could seek DNA testing, in cases where good faith claims of innocence were timely raised. [The defendant's] guilty status has not changed since his 1989 conviction; advances in technology allegedly occurring after that date do not explain why he, if truly innocent, did not seek immediate testing, or, at the very least, testing available as technology improved during the intervening years, rather than languishing on death row, all the while being supposedly innocent.

\*   \*   \*

> **Taking into consideration the strength of the evidence proffered against [the defendant] at trial, as the DNA testing provision explicitly requires, [the defendant's] deliberate decision at the time of trial not to seek further scientific testing, his counsel's apparent decision not to seek DNA testing throughout these lengthy post-conviction proceedings, and the belated timing of the current claim, it cannot reasonably be concluded that his DNA testing motion was made "in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice."**

*Id.* at 579-81, 65 A.3d at 357-59 (internal citations omitted) (emphasis added). Thus, our Supreme Court affirmed the order denying post-conviction DNA testing.[6] *Id.* at 581-82, 65 A.3d at 359.

---

[6] The PCRA court denied the DNA testing request on different grounds.

Instantly, Appellant's trial took place on May 6-7, 2004. At trial, the Commonwealth introduced testimony concerning Appellant's assault on Victim using a claw hammer and admitted into evidence the hammer used in the attack. Thus, the evidence Appellant seeks to have DNA tested was discovered and available before Appellant's trial. Additionally, DNA testing technology was available at the time of Appellant's trial in 2004, the jury reached its verdict after January 1, 1995, and the court did not refuse a request for funds for DNA testing. Consequently, Appellant is unable to satisfy the threshold requirements necessary to obtain post-conviction DNA testing. *See* 42 Pa.C.S.A. § 9543.1(a)(2); ***B. Williams, supra***; ***Perry, supra***.

Appellant has also failed to present a *prima facie* case demonstrating his actual innocence. Appellant does not contest on appeal that he swung the hammer at issue. Instead, Appellant claims he hit only the windows and sunroof of Victim's car with the hammer, but he did not strike Victim. The trial court addressed Appellant's claim of actual innocence as follows:

> Appellant was found guilty of aggravated assault under two subsections of 18 Pa.C.S.A. § 2702, (a)(1) and (a)(4). A person is guilty of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly…." Thus, a person can be found guilty of aggravated assault if the Commonwealth proves, beyond a reasonable doubt, that the defendant attempted to cause the victim serious bodily injury. Aggravated assault does not require proof that serious bodily injury was inflicted but only that an attempt was made to cause such injury.

A person is guilty of aggravated assault under 18 Pa.C.S.A. § 2702(a)(4) if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." Thus, one can be guilty under this statute if one attempts to cause bodily injury with a deadly weapon.

At trial, [V]ictim testified that on the evening of October 15, 2003, she pulled into her driveway and turned off her car. She felt someone grab the car door and rip it open. She then heard Appellant say: "Go to my probation officer, will you, fucking bitch. You're going to die." Appellant raised the claw hammer and [struck V]ictim in the area of her left brow bone. Appellant then continued with his attack on [V]ictim and on her car.

[V]ictim (and Appellant's) daughter testified that on the day of the incident she saw her father swing a hammer at her mother and hit her mother on the eyebrow bone. She also saw her father hitting her mother's car with the hammer and breaking the car's windows while her mother was still in the car.

Appellant himself testified that on the night of the incident he felt a "mania…up rise," and that he took the hammer and smashed every window of [V]ictim's car while [V]ictim remained in the automobile. The last thing he struck was the car's sunroof, and then "all the glass fell on top of her. It was like big chunks of it just busted right down in the head."

Appellant claims that DNA testing would reveal that the blood on the hammer was his own, caused by a dog bite, and thus he could be not guilty of the crime of aggravated assault. Appellant is incorrect. The presence or absence of [V]ictim's blood on the hammer is immaterial to the issue of whether Appellant attempted to cause serious bodily injury, or attempted to cause bodily injury with a deadly weapon. Accordingly, in the unlikely event that DNA testing actually revealed the absence of [V]ictim's blood on the hammer, such evidence could not establish Appellant's actual innocence of the crime of aggravated assault.

(PCRA Court Opinion at 3-5) (internal citations and some quotation marks

omitted). We accept the court's reasoning and conclusion that the absence of Victim's DNA on the hammer would not establish Appellant's actual innocence for aggravated assault. *See* 42 Pa.C.S.A. § 9543.1(c)(3); ***B. Williams, supra***; ***G. Williams, supra***; ***Smith, supra***; ***Heilman, supra***.

Further, Appellant did not seek DNA testing of the hammer at the time of his trial in 2004. Between 2005 and 2014, Appellant unsuccessfully litigated three PCRA petitions, none of which requested DNA testing of the hammer used in the attack. Appellant did not file the current request for DNA testing of the hammer until November 7, 2014. In light of the overwhelming evidence of Appellant's guilt at trial (including Victim's testimony and testimony from several eyewitnesses who saw Appellant strike Victim with the hammer), Appellant's decision not to seek DNA testing at the time of trial, Appellant's failure to seek DNA testing throughout the post-conviction proceedings in this case, and the belated timing of Appellant's current request for DNA testing, the record demonstrates that Appellant's motion for DNA testing is untimely for purposes of Section 9543.1(d). *See* 42 Pa.C.S.A. § 9543.1(d)(1)(iii); ***Edmiston, supra***.

Based upon the foregoing, Appellant failed to satisfy the threshold requirements to obtain DNA testing pursuant to Section 9543.1(a)(2); he did not present a *prima facie* case of actual innocence pursuant to Section 9543.1(c)(3); and he failed to make his request for DNA testing in a timely manner pursuant to Section 9543.1(d)(1)(iii). Therefore, the PCRA court

properly denied Appellant's motion for post-conviction DNA testing.[7]

Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/23/2015

_____

[7] On April 22, 2015, Appellant filed a *pro se* motion in this Court for transmission of the record pursuant to Pa.R.A.P. 1931, seeking a pre-trial transcript dated May 5, 2004, trial transcripts dated May 6, 2004 and May 7, 2004, the sentencing transcript dated July 14, 2004, and all exhibits, including photographs presented at trial. We have obtained the trial transcripts necessary to dispose of Appellant's claim on appeal. Regarding the other transcripts/exhibits Appellant wants, Appellant fails to explain how these documents are relevant to disposition of his appeal and their exclusion from the certified record has not hampered our review. Thus, we deny Appellant's motion for transmission of the record.

Appellant filed another *pro se* motion with this Court on May 7, 2015, to supplement an exhibit, in rebuttal to the Commonwealth's brief. Appellant contends the Commonwealth's statement on appeal that Appellant previously litigated his request for DNA testing is belied by the record. In support of his position, Appellant seeks to supplement the record with the PCRA court's March 7, 2013 order dismissing an earlier request for DNA testing (filed August 28, 2012) based on the pendency of Appellant's appeal from the order denying his third PCRA petition. The court's March 7, 2013 order is absent from the certified record. Nevertheless, nothing in the record supports the Commonwealth's assertion that Appellant previously litigated his request for DNA testing on the merits; and we do not deny Appellant relief on this basis. Thus, we deny Appellant's motion to supplement the record.

- 20 -