J-S37037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIE EARL MCCLELLAN | : | |
| | : | |
| Appellant | : | No. 782 EDA 2022 |

Appeal from the Order Entered February 22, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0208241-1998

BEFORE: BOWES, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY OLSON, J.: **FILED DECEMBER 6, 2022**

Appellant, Willie Earl McClellan, appeals *pro se* from the order entered on February 22, 2022, dismissing his petition for DNA testing under the Post-Conviction Relief Act (PCRA).[1] We affirm.

A prior panel of this Court previously set forth the facts and procedural history of this case as follows:

> On January 7, 1998, police were called to [a residence located along North] 16th Street in Philadelphia, [Pennsylvania] where they found [A]ppellant's wife standing outside crying hysterically. They entered the residence, where they found [A]ppellant's two children who had been stabbed to death. They also found [A]ppellant in his bed under covers. He had stab wounds, but was not in danger of death. On the interior walls of the house were magic marker messages directed to [A]ppellant's wife. The first message read: "Shy Butch, you can be. (sic) Love, Earl." The second message read: "I always gave you what you wanted, now you are free. Love, Earl." The reference in the first message to "Shy Butch'' was a reference to an internet screen name that

---

[1] 42 Pa.C.S.A. § 9543.1.

[A]ppellant's wife allegedly used when conversing in a homosexually oriented chat room. Based on the evidence and the information provided by [A]ppellant's wife, [A]ppellant was arrested, and charged with multiple homicide[s].

Following [A]ppellant's arrest, he provided the police with a confession, which was ultimately reduced to writing and signed. Subsequent attempts to have this confession suppressed were unsuccessful, and by the time of trial the Commonwealth was prepared to introduce this confession as part of its case[-]in[-]chief.

The case proceeded to trial, with the Commonwealth pursuing the death penalty. The trial began and the Commonwealth, during the first day, produced three witnesses including the two police officers who were first on the scene, and the paramedic who first attended to [A]ppellant's stab wounds.

On the second day of trial[,] the paramedic completed his testimony before the lunch break. Following the lunch break [A]ppellant's counsel and the Commonwealth's attorney advised the trial court that a plea agreement had been reached, under the terms of which [A]ppellant would plead guilty to two homicides and the weapons offense in return for a sentence of two consecutive life sentences. Thereafter, the trial court presided over a colloquy in which [A]ppellant's counsel explained to [A]ppellant the full ramifications of his decision to plead guilty. This colloquy alone encompasse[d] eleven pages of the transcript. The trial judge accepted the guilty plea and imposed the consecutive life sentences that were discussed, but not without conducting his own inquiry into the voluntariness of [A]ppellant's plea. The trial judge then ended the proceedings, which meant the jury was dismissed as were the Commonwealth's witnesses. The following day [A]ppellant called his attorney and stated his desire to withdraw his guilty plea and proceed to another trial. The trial attorney complied with [A]ppellant's wishes to file a motion to withdraw the guilty plea, but simultaneously filed a motion to withdraw as counsel due to the apparent conflict arising from the complaint of [A]ppellant that trial counsel was ineffective in advising him to plead guilty. The petition to withdraw as counsel was granted, new counsel was appointed, and an evidentiary hearing was held in which the circumstances surrounding [A]ppellant's decision to plead guilty were explored. The presiding judge found no support for [A]ppellant's claim of ineffective

assistance of counsel and ultimately denied [A]ppellant's request to withdraw his guilty plea.

*Commonwealth v. McClellan*, 776 A.2d 1007 (Pa. Super. 2001) (unpublished memorandum) at *1-3.

On direct appeal to this Court, Appellant argued the ineffective assistance of counsel constituted manifest injustice which permitted the withdraw of his guilty plea. More specifically, as we explained:

> Appellant's argument to this Court [was] that the circumstances under which [A]ppellant agreed to accept his attorney's advice were so "volatile and emotional" that his plea could not "be viewed as voluntarily, willingly, and intelligently made." Our response to this argument [was] twofold. First, in any proceeding where the issue is whether the defendant murdered his children, we would expect that there would be a certain amount of volatility and emotion. Secondly, although counsel argue[d] that [A]ppellant asserted his "innocence" prior to agreeing to plead guilty, counsel [made] no claim that [A]ppellant ha[d] a defense to the charges. Moreover, appellate counsel admit[ted] that trial counsel's legal advice to [A]ppellant was sound. Therefore, there is nothing contained in [A]ppellant's arguments that persuade[d] this Court that the trial judge was incorrect in his conclusion that [A]ppellant failed to demonstrate "manifest injustice." By extension, [we determined] there [was] no basis upon which to overrule the judge's determination that counsel was not ineffective.
>
> Consequently, we [] affirm[ed] the judgment of sentence.

*Id.* at *6-7. Appellant did not seek an allowance of appeal from our Supreme Court.

On January 29, 2020,[2] Appellant filed a petition for DNA testing under the PCRA. "An individual convicted of a criminal offense in a court of this

---

[2] Appellant unsuccessfully litigated several PCRA petitions between his direct appeal and his current claim.

- 3 -

Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction." 42 Pa.C.S.A.. § 9543.1(a)(1). "DNA testing may be sought at any time if the motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice." 42 Pa.C.S.A. § 9543.1(a)(4). "Notwithstanding any other provision of law, a plea of guilty to a crime of violence[…] or a confession given by an applicant concerning the offense for which the applicant was convicted, shall not prohibit the applicant from asserting actual innocence […] or the court from making a determination and ordering DNA testing[.]" 42 Pa.C.S.A. § 9543.1(a)(5).[3] "The motion shall explain how […] after review of the record of the applicant's guilty plea there is a reasonable probability, that the testing would produce exculpatory evidence that would establish: (i) the applicant's actual innocence of the offense for which the applicant was convicted[.]" 42 Pa.C.S.A.

_____

[3] Under the prior version of Section 9543.1 adopted in 2002, "[w]e found that the language of § 9543.1 clearly preclude[d] that section's application to petitioners seeking to challenge convictions resulting in guilty pleas by reference to DNA evidence." **Williams v. Erie Cnty. Dist. Attorney's Off.**, 848 A.2d 967, 972 (Pa. Super. 2004). We note that Section 9543.1 was amended in 2018 to include, *inter alia*, Section (a)(5). While this case involves a guilty plea and Section 9543.1(a)(5) permits Appellant's request for testing, as discussed at length below, the purported results of DNA testing on the specific items requested simply would not exculpate Appellant. As such, we need not examine the factual, evidentiary record supporting Appellant's plea to decide this case.

§ 9543.1(a)(6)(i). The applicant must specify the evidence to be tested, consent to provide samples of bodily fluid for use in the DNA testing, acknowledge that any data obtained from any DNA samples or test results may be entered into law enforcement databases for investigation of other crimes and may be used as evidence in other cases, and specifically request DNA testing for the purpose of demonstrating actual innocence. *See* 42 Pa.C.S.A. § 9543.1(c)(1)(i-iii)-(c)(2). Finally, an applicant "must present *a prima facie* case demonstrating that the: (i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and (ii) DNA testing of the specific evidence, assuming exculpatory results, would establish [] the applicant's actual innocence of the offense for which the applicant was convicted[.]" 42 Pa.C.S.A. § 9543.1(c)(3).

On February 22, 2022, the PCRA court denied relief by order and opinion, determining that Appellant failed to meet his initial burden under Section 9543.1:

> Specifically, [Appellant] failed to state that he consented to provide samples of bodily fluid for use in DNA testing and to acknowledge that he understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against him in other cases.
>
> Furthermore, even if [Appellant] satisfied the threshold requirements under [Section] 9543.1(a), he failed to provide any meaningful analysis to demonstrate that DNA testing would establish his innocence. Although [Appellant] referenced his burden of proof, by requesting that specific articles, namely a pair

- 5 -

of underwear, a T-shirt, and a knife be tested, it is unclear how the absence of [Appellant's] DNA or the detection of distinct DNA on those items would establish his innocence. Accordingly, [Appellant's] request for DNA testing is denied.

PCRA Court Opinion, 2/22/2022, at 1.

On appeal *pro se*, Appellant raises the following issue for our review:

Whether the [PCRA] court judge erred in the denial of Appellant's motion [for DNA testing], rather than allow Appellant to correct the deficiencies in the motion filed[?]

Appellant's *Pro Se* Brief at 2 (complete capitalization omitted).

Appellant argues that he can satisfy the requirements of Section 9543.1 if given the chance to cure the deficiencies of the motion he originally filed. *Id.* at 6-7. Appellant "gives consent to provide samples of bodily fluid" and "understand[s] that, if the motion is granted, any data obtained from the DNA samples or test results may be entered into law enforcement databases, and may be used in the investigation of other crimes and may be used as evidence against [Appellant.]" *Id.* at 7. Appellant also "asserts that he will provide the meaningful analysis to demonstrate how the DNA testing will establish Appellant's innocence." *Id.* Appellant argues that DNA testing of the clothes he was wearing at the time of the crimes, white underwear briefs and a white t-shirt, "will demonstrate Appellant's perspiration around the neck and Appellant's blood" but that "there will be no blood of the victims on these clothes[.]" *Id.* Appellant also contends that DNA testing of the knife found on his nightstand will reveal "Appellant's blood and fingerprints on it, as well as Appellant's ex-wife's fingerprints." *Id.* at 8. Finally, for the first time on

appeal, Appellant "realizes that there is a fourth piece of evidence that needs to be tested[,]" specifically his ex-wife's t-shirt that "when tested will have [her] perspiration on the collar and Appellant's blood on it[.]" *Id.* at 7-8.

Our standard of review is as follows:

Generally, the trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in Section 9543.1. We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm.

*Commonwealth v. Walsh*, 125 A.3d 1248, 1252–1253 (Pa. Super. 2015) (citation omitted).

This Court has stated that the statutory text of Section 9543.1

requires the applicant to demonstrate that favorable results of the requested DNA testing would establish the applicant's actual innocence of the crime of conviction. The statutory standard to obtain testing requires more than conjecture or speculation; **it demands a *prima facie* case that the DNA results, if exculpatory, would establish actual innocence.**

*Id.* at 1254–1255 (citation omitted; emphasis in original). "[A]ctual innocence" is defined as making it "more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *Commonwealth v. Payne*, 129 A. 3d 546, 556 (Pa. Super. 2015).

"Significantly, in DNA testing cases, 'an absence of evidence is not evidence of absence.'" *Walsh*, 125 A.3d at 1255, *citing **Commonwealth v. Heilman**, 867 A.2d 542, 547 (Pa. Super. 2005); **Commonwealth v. B. Williams**, 35 A.3d 44, 50–51 (Pa. Super. 2011) (affirming trial court's denial

of DNA testing where appellant failed to meet threshold requirements for DNA testing, under Section 9543.1(a)(2), and did not demonstrate *prima facie* case of "actual innocence"; even if appellant's DNA were not found on hat/wig, record contained overwhelming evidence of appellant's guilt including three unshakable eyewitnesses, appellant's confession, and appellant's access to weapon used in crimes); **Commonwealth v. Smith**, 889 A.2d 582 (Pa. Super. 2005) (affirming denial of request for post-conviction DNA testing where absence of appellant's DNA from victim's fingernails would not establish appellant's innocence of victim's murder; nothing in record supported appellant's claim that victim would have scratched her assailant leaving DNA evidence under her fingernails).

Upon review, we agree with the PCRA court that Appellant failed to provide any meaningful analysis to demonstrate that DNA testing would establish his innocence. The absence of the victims' DNA on the underwear and t-shirt Appellant was wearing at the time of the crimes would not establish Appellant's absence from the scene. **Walsh**, **supra**. Moreover, the presence of Appellant's DNA on his own clothing and the knife found near him would not exculpate him. Furthermore, Section 9543.1 only pertains to DNA testing and does not provide testing for fingerprints. Therefore, the PCRA court properly denied relief regarding Appellant's request to test the knife found at the scene for ex-wife's fingerprints. **See Commonwealth v. Matthews**, 256

A.3d 29 (Pa. Super. 2021) (unpublished memorandum[4] at *3) ("[I]mportantly, a request for fingerprint testing is not the same thing as a request for DNA testing."). Finally, in his PCRA motion, Appellant failed to request DNA testing of the t-shirt worn by his ex-wife and, as a result, waived that claim for our review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.). Regardless, Appellant has not demonstrated how the presence of his DNA if found on his ex-wife's t-shirt, would exonerate him. Because Appellant failed to demonstrate that DNA testing would establish his innocence, correcting the deficiencies in his motion regarding his consent to provide samples of bodily fluid and to allow data obtained be entered into law enforcement databases for other crimes would not afford Appellant relief. Accordingly, we discern no abuse of discretion or error of law in denying Appellant's request for DNA testing under the PCRA.

Order affirmed.

---

[4] *See* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2022