J-S10013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GARY L. BROWN | : | |
| | : | |
| Appellant | : | No. 2843 EDA 2017 |

Appeal from the PCRA Order August 21, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002541-1997,
CP-15-CR-0003278-1997

BEFORE:  BOWES, J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 16, 2018**

Gary L. Brown appeals *pro se* from the August 21, 2017 order denying his request for post-conviction DNA testing.  We affirm.

On September 30, 1998, a jury convicted Appellant of two counts of first degree murder and related offenses in connection with the shooting deaths of Saysana Laomoi and Ty Sacksith.  In affirming the ensuing judgment of sentence, this Court adopted the trial court's statement of facts as follows:

> On the evening of May 31, 1997[,] [Appellant] and Daryl Glasco paged . . . Laomoi to inquire about purchasing marijuana from him.  Laomoi was again paged on the morning of June 1, 1997 for the same purpose.  [Appellant] and Glasco arranged to meet Laomoi later that day.
>
> At approximately 11:00 am, [Appellant] . . . and Glasco . . . went to [an] apartment complex parking lot, and entered a green Toyota driven by . . . Sacksith.  Laomoi was sitting in the

front passenger seat. [Appellant] sat behind the driver's seat, and Glasco sat behind the front passenger seat. The Toyota was driven from the parking lot and proceeded west on Union Street. Laomoi was shot in the neck once and twice in the head. Sacksith was shot once in the back of the head. Both victims were shot with the same 38-caliber revolver.

***Commonwealth v. Brown***, 742 A.2d 1140 (Pa.Super. 1999) (unpublished memorandum at 2).

The trial court imposed two consecutive life sentences for the murders, and an aggregate term of thirty-two-and-one-half to sixty-five years incarceration for the remaining offenses. This Court affirmed the judgment of sentence, and on November 23, 1999, our Supreme Court denied allowance of appeal. ***Commonwealth v. Brown***, 747 A.2d 364 (Pa. 1999).

The trial court outlined the subsequent procedural history as follows:

Failing to obtain relief through [five PCRA] petitions, Appellant turned to 42 Pa.C.S.A. § 9543.1 "Postconviction DNA Testing," and on June 27, 2017, filed a motion requesting that DNA testing be performed on the "lift tape" used to lift fingerprints from the car in which the victims were killed, and DNA testing on blood located on the trigger guard of the murder weapon.

The Commonwealth filed an answer to Appellant's motion on July 21, 2017, and on August 3, 2017[,] Appellant filed his rebuttal to the Commonwealth's answer. On August 21, 2017, after finding that Appellant had failed to establish entitlement to DNA testing, [the trial court] denied his request.[1] This appeal followed.

_____

[1] The PCRA's one-year time bar does not apply to a petition for DNA testing. As we explained in ***In re Payne***, 129 A.3d 546, 555-556 n.12 (Pa.Super. 2015), "post-conviction DNA testing does not directly create an exception to § 9545's one-year time ban. Rather it allows for a convicted individual to

*(Footnote Continued Next Page)*

Trial Court Opinion, 9/28/17, at 1-2.

The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied, and the trial court issued a Rule 1925(a) opinion. Appellant presents one question for our review: Whether "the lower court abused its discretion when it dismissed the [DNA] petition filed by . . . Appellant . . . pertaining to this instant case." Appellant's brief at 3.

We review the trial court's decision to grant or deny a post-conviction petition for DNA testing for whether the findings of the trial court are supported by the record and free of legal error. *Commonwealth v. Conway*, 14 A.3d 101, 108 (Pa.Super. 2011) (footnote and citation omitted) ("Post conviction DNA testing falls under the aegis of the Pennsylvania Post Conviction Relief Act . . ., and thus, "our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error.").

Appellant's request for DNA testing is two-fold. First, he sought to test the "lift tape" that the crime scene investigators used to lift his fingerprints

(Footnote Continued) ————————————

first obtain DNA testing which could then be used within a PCRA petition to establish new facts in order to satisfy the requirements of an exception under 42 Pa.C.S.A. § 9545 (b)(2)." Additionally, there is no statutory right to the assistance of counsel in requesting DNA testing. *Commonwealth v. Brooks*, 875 A.2d 1141, 1147 (Pa.Super. 2005).

from the back of the driver's seat in Sacksith's car. He asserts that the results of DNA testing on the organic matter that constitutes the fingerprint would prove his actual innocence of the offenses by confirming that the fingerprints that were originally identified as his were actually left by someone else. Next, Appellant requested DNA testing on the blood swabbed from the trigger guard of the handgun used to murder both victims. Although the swab that was tested at the time of trial identified the blood of one of the victims, Appellant contends that additional swabs exist that would reveal DNA that belongs to George Cornell, who Appellant claims is the prior owner of the firearm. For the following reasons, we find that the trial court did not err in denying relief.

In relevant part, the statute governing post-conviction DNA testing of specific evidence provides as follows:

> **(c) Requirements**.—In any motion under subsection (a) [regarding forensic DNA testing], under penalty of perjury, the applicant shall:
>
> (1) (i) specify the evidence to be tested;
>
> . . . .
>
> (2) (i) assert the applicant's actual innocence of the offense for which the applicant was convicted; and
>
> (3) present a prima facie case demonstrating that the:
>
> (i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted;

. . . .

**(d) Order.**—

. . . .

(2) The court shall not order the testing requested . . . if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]

. . . .

42 Pa.C.S. § 9543.1(c), (d). Significantly, however, there is a preliminary requirement that compels a petitioner to demonstrate:

If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

42 Pa.C.S. § 9543.1(a)(2). Thus, in order to prevail on an application for DNA testing, as a threshold matter, Appellant must prove either that (1) technology did not permit testing when he was tried; (2) the verdict preceded January 1, 1995, and counsel neglected to request testing during

trial; or (3) the trial court denied Appellant's request for funds to pay for the testing despite his indigence. *Id*.

Thereafter, presuming Appellant satisfies these preliminary requirements, Appellant must adduce *prima facie* evidence that, assuming exculpatory results, the evidence would demonstrate his actual innocence of the offense for which he was convicted. In **Conway**, **supra** at 109 (quoting **Schlup v. Delo**, 513 U.S. 298, 327 (1995)), we explained that actual innocence in this context and in the context of § 9543.1(d)(2)(i), is demonstrated by evidence that "makes it 'more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.'" **See also In re Payne**, **supra** at 556. We concluded, "this standard requires a reviewing court 'to make a probabilistic determination about what reasonable, properly instructed jurors would do,' if presented with the new evidence." **Conway**, **supra** at 109 (quoting **Schlup**, **supra** at 329).

Appellant's request for DNA testing fails for two reasons. First, it is stale insofar as the samples that he is currently requesting to test were available for testing during his 1998 trial. Indeed, the Commonwealth introduced evidence outlining the results of the DNA tests that the State Police Crime Laboratory performed on several pieces of evidence that investigators removed from inside the vehicle, including the trigger guard that Appellant seeks to test herein. The crime lab performed DNA tests in anticipation of trial and submitted those results as evidence; however,

Appellant did not request that the laboratory test the fingerprint lift tape or demand that the unit test any of the swabs from the interior of the vehicle that he currently contends avoided testing. Moreover, as it relates to Appellant's statutory obligations, Appellant does not assert, much less demonstrate that: 1) advances in technology would facilitate testing that was previously hindered; 2) he was convicted prior to 1995 and counsel failed to request testing; or 3) he was indigent and the trial court denied his request for funds to pay for DNA testing prior to trial. **See** 42 Pa.C.S. § 9543.1(a)(2). Appellant simply ignores these threshold components of the post-conviction DNA statute. Accordingly, the trial court did not err in denying his petition for DNA testing. **See Commonwealth v. Perry**, 959 A.2d 932, 939 (Pa.Super. 2008) (no relief due when petitioner failed to satisfy the conditions outlined in § 9543.1(a)(2)); **Commonwealth v. Walsh**, 125 A.3d 1248, 1257(Pa.Super. 2015) (same).

Moreover, even if Appellant had satisfied one of the preliminary components of § 9543.a(a)(2), which he did not, the present claim would fail. Stated plainly, assuming the DNA testing produced exculpatory results, Appellant cannot establish a *prima facie* case of actual innocence. The Commonwealth presented substantial evidence of Appellant's guilt.

On a prior appeal, we reiterated the trial court's summation of the evidence as follows:

> Bonnie Weston, Laomoi's girlfriend, was interviewed by police and stated that Laomoi was supposed to help Sacksith sell

- 7 -

marijuana to an individual named "Gary." Jessica Smith, [Appellant's] girlfriend, told police that [Appellant] and Glasco paged Laomoi [for that purpose] from her apartment on the night of May 31, 1997. Smith saw Laomoi arrive in the parking lot to [Appellant's] apartment on the morning of June 1, 1997, get out, and walk towards [Appellant's] apartment building. Smith later went to [Appellant's] apartment and found a "large package of marijuana."

**Brown**, **supra** (unpublished memorandum at 2) (quoting Trial Court Opinion, 12/24/98, at 2). The trial court further explained that, after committing the murders,

[Appellant and Glasco] took marijuana from [Sacksith's] car and returned on foot to [Appellant's address] with the revolver, bloody clothing, and a box of 38-caliber ammunition. [The pair] then repackaged the marijuana into smaller bags. [Appellant] instructed his brother[,] Eric[,] to take a gym bag and a plastic bag to their grandmother's home in West Chester.

**Id**.

Thereafter,

A search warrant was obtained for [Appellant's] apartment where a 38-caliber revolver was recovered; ballistics indicated that it was the murder weapon. A search warrant for the home of [Appellant's] grandmother, Elizabeth Brown, yielded one box of 38-caliber ammunition, clothing containing traces of blood, and marijuana.

During the investigation of the crime scene . . . Glasco's bloody fingerprint was found behind the passenger seat. . . . Glasco's fingerprint was also found on the box of 38-caliber ammunition. A second print found behind the driver's seat was matched to [Appellant].

A fellow inmate testified at trial that Brown sent him to tell the District Attorney that Glasco had confessed to committing both murders, in an attempt to shift the blame away from [Appellant]. Talking points in [Appellant's] handwriting were admitted to corroborate that testimony.

- 8 -

*Id*. at 2-3. Based on the foregoing testimony, the jury convicted Appellant of, *inter alia*, two counts of murder.

As it relates to the lifting tape used to obtain Appellant's latent finger prints from Sacksith's vehicle, Appellant claims that a DNA test on the organic material the tape lifted from the back of the driver's seat would reveal the presence of someone else's DNA, presumably refuting the expert testimony that confirmed that the latent fingerprint matched Appellant's. For the following reason, this assertion fails.

Notwithstanding the fingerprint evidence that Appellant hopes to undermine with his DNA request, the remaining evidence demonstrates Appellant's guilt beyond a reasonable doubt. Appellant coaxed the victims to his apartment complex under the guise of purchasing marijuana. Neither victim was seen alive again. Following the murders, Appellant and Glasco took the marijuana, murder weapon, ammunition, and bloody clothes to Appellant's apartment. Appellant divided the marijuana and directed his brother to take the ammunition, clothing, and a portion of the marijuana to their grandmother's home, where the items were recovered by police. In addition, crime scene investigators discovered Glasco's bloody fingerprint at the crime scene and on the box of ammunition that was found within Appellant's control. Similarly, police discovered Appellants' firearm, which ballistics confirmed as the murder weapon, in his apartment. Later, while Appellant was incarcerated pending trial, he enlisted a fellow inmate to make

false statements to the district attorney that shifted responsibility for both murders to Glasco.

All of the foregoing non-fingerprint evidence establishing Appellant's guilt was presented to the jury during trial. Thus, even presuming that a test on the lift tape produced exculpatory evidence, it would not override the remaining physical and testimonial evidence establishing Appellant's guilt. Thus, no relief is due. **See Walsh**, **supra** at 1245-55 ("The statutory standard to obtain testing requires more than conjecture or speculation; it demands a *prima facie* case that the DNA results, if exculpatory, would establish actual innocence ").

The results of a new DNA test on the trigger guard would be equally unavailing. Appellant's justification for re-testing the trigger guard is not a model of clarity. He appears to assert that the blood found on his gun belonged to the gun's prior owner and not, as the DNA test performed prior to trial confirmed, one of the victims. However, Appellant neglects to present any realistic scenario where a vestige of Mr. Cornell's DNA on the firearm that Cornell previously owned is exculpatory. Ballistic evidence established that Appellant's gun was the murder weapon. Presuming that the blood taken from the trigger guard was re-tested and identified as belonging to Mr. Cornell rather than a victim, that revelation does not exonerate Appellant *ipso facto*. At most, the discovery of Mr. Cornell's DNA on the weapon casts a doubt on the accuracy of the DNA report generally.

However, Appellant's convictions did not rest upon any DNA evidence, and his statutory burden of establishing a *prima facie* case of actual innocence is significantly higher than questioning the accuracy of any single piece of evidence. Accordingly, Appellant's claim fails for identical reasons that we discussed in addressing his request to test the fingerprint tape, *i.e.*, Appellant failed to make out a *prima facie* case that the testing would produce exculpatory evidence proving his actual innocence. ***See Walsh***, ***supra***.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/18