J-S02002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN WELLS | : | |
| | : | |
| Appellant | : | No. 575 MDA 2022 |

Appeal from the Order Entered March 23, 2022
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0002675-1995

BEFORE: PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:     **FILED: APRIL 4, 2023**

Brian Wells appeals from the Dauphin County Court of Common Pleas' order denying his motion filed pursuant to the Post Conviction Relief Act ("PCRA")[1] for post-conviction DNA testing ("DNA motion") of a windbreaker jacket worn by the person Wells was convicted of killing. Wells primarily argues he has made out a *prima facie* case that the DNA testing would produce exculpatory evidence establishing his actual innocence of the murder, and the PCRA court erred by finding otherwise. We disagree, and therefore affirm.

A more detailed version of the facts of this case can be found in the PCRA court's opinion in support of its denial of the DNA motion, *see* PCRA Court Memorandum Opinion, 3/23/2022, at 3-11, but we offer the following

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

abbreviated version of the relevant facts. At around 1:30 in the morning on June 17, 1995, Ricky Wise was standing on Reily Road in Harrisburg when he heard loud sounds and screaming. He saw Samuel Hicks, a teenager Wise knew, running down the street, and heard someone yell that Hicks had been shot. Hicks collapsed, and Wise loaded him into a truck and took him to Harrisburg Hospital. Hicks died at the hospital.

Police Officer LeRoy Lucas of the City of Harrisburg Bureau of Police responded to the shooting. Officer Lucas went to Harrisburg Hospital, and collected the clothing Hicks had been wearing, including a windbreaker jacket which was wet with blood. Officer Lucas also collected two bullet projectiles, one that had been extracted from Hicks's chest and one that had been extracted from his foot. The evidence was sent to the Pennsylvania State Police laboratory for analysis. DNA testing, although available at the time, was not conducted on the windbreaker. *See id.* at 15.

Wells, along with Andre Gale and Matthew Robinson, were arrested for the killing and charged with homicide and related offenses. The matter proceeded to a joint jury trial. At trial, the Commonwealth admitted the windbreaker into evidence. Corporal Ernst Baltimore, Jr. of the Pennsylvania State Police testified he had examined the windbreaker and found lead residue around a bullet hole. He also testified that the bullet recovered from Hicks's chest was discharged from a different firearm than the bullet recovered from

Hicks's foot, which meant that two different firearms had been used to shoot Hicks. *See* N.T. Jury Trial, 3/11/1996-3/20/1996, at 217-218, 227.

The Commonwealth called several eyewitnesses to the murder. Audrey Evans testified she was in front of her apartment on Reily Road on June 17, 1995, when she saw Hicks, whom she knew, standing with two men dressed in black, one of whom was holding Hicks under the arm. Evans was unable to see the face of either of the men with Hicks. She testified she heard gunshots, and saw Hicks staggering into the road and collapse. About twenty or thirty minutes after the shooting, Evans saw the three co-defendants, whom she also knew from the neighborhood, arrive in a vehicle. Gale asked Evans if she had seen anything, and Evans told Gale she had not.

Andre Hernandez, who was familiar with Wells, also testified. According to Hernandez, he was walking near the scene of the shooting in the early morning hours of June 17, 1995, heard gunshots, and recognized Wells as the shooter. Similarly, Virginia Garcia testified she knew Wells from the neighborhood and saw him shoot Hicks. Keontay Hodge, who was with Garcia at the time of the shooting, testified she saw two men with Hicks, including Wells, who were holding Hicks up under his arms. Like Garcia, Hodge knew Wells from the neighborhood and testified she saw him shoot Hicks. Hodge helped Wise place Hicks into the truck to be taken to the hospital. All three of these witnesses testified Wells was wearing black.

The Commonwealth also called Detective David Lau, who had taken a statement from Wells on June 20, 1995. In the statement, Wells maintained he had gone to two movies on the evening of June 16, 1995, and then went bar-hopping until two a.m. Wells also told the detective that he had been robbed the night before Hicks was shot, and one of the robbers was Hicks.

Betty Walters, who had a relationship with Wells, also testified. According to Walters, Wells came to her grandmother's house around two a.m. on June 17, 1995 and was intoxicated. He told Walters he had been in a "scrap," and needed an alibi. *See id.* at 317, 319, 322. Walters testified Wells said he was "going mad down" and spoke of a homicide charge. *See id.* at 325-326. Wells presented an alibi defense at trial.

Ultimately, the jury convicted Wells of first-degree murder, criminal conspiracy and recklessly endangering another person ("REAP"). The court sentenced Wells to life in prison for the murder conviction, a concurrent term of five to ten years' imprisonment for the conspiracy conviction and a consecutive term of 11 ½ to 23 months' imprisonment for the REAP conviction. This Court affirmed the judgment of sentence on direct appeal.

In 1998, Wells filed a timely first PCRA petition, which the PCRA court ultimately dismissed. This Court then dismissed the appeal Wells filed because Wells failed to file a brief. In 2012, Wells filed a second PCRA petition, which the PCRA court dismissed as untimely.

Almost nine years later, in August 2021, Wells filed a motion for post-conviction DNA testing of the windbreaker, specifically the underarm area of the windbreaker. In the motion, Wells averred that the windbreaker was not subjected to DNA testing prior to trial and he was requesting that the jacket be tested using a new method of DNA collection, M-Vac DNA extraction. He specifically asked that the underarm area of the jacket be tested because "[t]he witnesses testified that the men who shot [Hicks] were holding him under the arms." Appellant's Brief at 15.

The PCRA court scheduled a hearing on the motion. At the hearing, the Commonwealth represented that it did not know if the windbreaker still existed. After discussing various additional points concerning the requested DNA testing, the court ordered the parties to submit memoranda on the merits of the motion. In its subsequent memorandum in opposition to the motion, the Commonwealth confirmed that it could not locate the windbreaker after "exhaust[ing] all conceivable options in attempting to locate the jacket." Commonwealth's Memorandum in Opposition to Petitioner's Post Conviction Relief Act, 3/1/2022, at 15 (unpaginated).

The PCRA court denied Wells's DNA motion. In its memorandum opinion in support of that order, the PCRA court noted that the specific section of the PCRA governing post-conviction DNA testing, 42 Pa.C.S.A. § 9543.1, required that the windbreaker be "available for testing as of the date of the motion" and that Wells make a *prima facie* showing that DNA testing of the

windbreaker would produce exculpatory evidence establishing his actual innocence. **See** PCRA Court Memorandum Opinion, 3/23/22, at 11-14 (*quoting* 42 Pa.C.S.A. § 9543.1). The PCRA court found that the windbreaker was not available for testing, and that Wells had failed to meet the actual innocence standard. This timely appeal followed.

Post-conviction DNA testing falls under the rubric of the PCRA. **See Commonwealth v. Tyler,** 234 A.3d 750, 753 (Pa. Super. 2020). Therefore, our standard of review of an order denying a motion for post-conviction DNA testing is whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. **See id.** Further, when reviewing the order, we must determine whether the applicant satisfied the statutory requirements listed in Section 9543.1. **See Commonwealth v. Walsh,** 125 A.3d 1248, 1253 (Pa. Super. 2015). Those requirements include that the evidence be available for testing as of the date of the motion, and that the applicant "present a *prima facie* case demonstrating that the … identity of or participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing" and that exculpatory results of the DNA testing would establish "the applicant's actual innocence of the offense for which [he] was convicted." 42 Pa. C.S.A. § 9543.1(a)(2); § 9543.1 (c)(3)(i)(ii) .

Wells argues the PCRA court erred by denying his DNA motion. As an initial matter, Wells does not explain why he did not ask for DNA testing of

the windbreaker until 2021, though he was convicted in 1996. Moreover, he gives only the scantest attention to the fact that the windbreaker is not available for testing. He merely avers that because the Commonwealth cannot find the windbreaker, "the Court should presume [Wells's] DNA is not on [Hicks's] windbreaker, and hold a new trial based on a theory of spoliation of the evidence." Appellant's Brief at 16. Wells does not develop this argument further or cite to any law in support of his assertion, nor does he account for the fact that the only pretesting relief available under Section 9543.1 is the ordering of DNA testing, not a new trial.[2] At bottom, Wells's undeveloped assertion does not establish that he is entitled to a new trial, **see Commonwealth v. Love**, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that arguments that are not sufficiently developed are waived), or for that matter, that he is entitled to DNA testing given that the windbreaker is not available for testing as specifically mandated by Section 9543.1(a)(2).

However, even if the windbreaker had been or were to be located, Wells would still not be entitled to have it tested for DNA as he has not, as the PCRA court found, demonstrated such testing would establish his actual innocence. Wells counters that he has met this standard. In support, Wells repeatedly argues this was a case where there was no physical evidence linking him to

---

[2] 42 Pa.C.S.A. § 9543.1(a)(1) provides that a person may make a motion "for the performance of forensic testing on specific evidence." The statute further provides that, *after* DNA testing has been conducted, the applicant may file a PCRA petition. **See** 42 Pa.C.S.A. § 9543.1(f)(1).

the murder and where the testimony of the Commonwealth's expert that two firearms were used to shoot Hicks conflicted with the eyewitnesses' testimony that there was only one shooter. He further asserts that because Hicks was, according to the eyewitnesses, "held or touched on the underarm portion of his jacket" by the men who killed him, the absence of Wells's DNA or the presence of the DNA of some other person in the jacket's underarm "would be exculpatory because it would show that another person, and not [Wells], perpetrated the homicide." Appellant's Brief at 23. This claim fails.

As noted above, Section 9543.1 requires Wells to demonstrate that favorable results of the requested DNA testing would establish his actual innocence of Hicks's murder, meaning the requested DNA evidence would make it more likely than not that no reasonable juror would have found Wells guilty beyond a reasonable doubt. **See Tyler**, 234 A.3d at 754 n.5. This standard "requires more than conjecture or speculation[.]" **Commonwealth v. Hardy**, 274 A.3d 1240, 1250 (Pa. Super. 2022) (citations omitted). It also requires more than the mere absence of Wells's DNA. **See Tyler,** 234 A.3d at 754 (stating that this Court has repeatedly held that the mere absence of an applicant's DNA, by itself, does not satisfy the actual innocence standard). Rather, Wells must present "some quantum of additional evidence in addition to the absence of [his] DNA to establish entitlement to relief." **Id.**

In finding that Wells had not met the actual innocence standard here, the PCRA court explained:

> Other than a bald assertion of actual innocence, [Wells] presented no additional theories, circumstances, or evidence that, taken in combination with the absence of his DNA on the victim's windbreaker jacket, would establish more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. At trial, there were a total of five eyewitnesses to the shooting - [Evans and a person Evans was with on the evening of the murder] saw two males dressed in all black holding [Hicks] "up under his arms" immediately prior to the shooting, but were unable to identify them; Hernandez testified that he saw [Wells] shoot [Hicks]; [Garcia and Hodge] saw [Wells] and another male dressed in all black holding [Hicks] "up under his arms" … and saw [Wells] shoot [Hicks]. All five eyewitnesses testified that they knew [Wells and his co-defendants] from the neighborhood and were familiar with them.

PCRA Court Opinion, 3/23/2022, at 16.

The PCRA court found that, based on this overwhelming evidence of guilt, the mere absence of [Wells's] DNA on the windbreaker would not be exculpatory, much less establish he was actually innocent of the crime. We agree. *See Hardy*, 274 A.3d at 1250 (citing fact that there was considerable circumstantial evidence of the applicant's guilt as a basis for rejecting the applicant's claim that the DNA evidence would be exculpatory and establish his actual innocence); *Tyler,* 234 A.3d at 754 (providing that the mere absence of an applicant's DNA does not establish his actual innocence).

And while Wells also makes a summary assertion that DNA testing could possibly reveal someone else's DNA was on the jacket's underarms, the mere presence of someone else's DNA on the jacket also does not establish Wells was actually innocent of the crime. Again, as the PCRA court explained, others' DNA may in fact have been on the windbreaker given that others had touched

it: Wise and Hodge lifted Hicks up after the shooting and placed him in a vehicle, and "several people at the hospital presumably touched the windbreaker while attempting to provide emergency medical care." Trial Court Opinion, 3/23/2022, at 17. Wells's summary and speculative claim concerning the possible presence of someone else's DNA on the windbreaker simply does not satisfy the actual innocence standard. **See Hardy**, 274 A.3d at 1250, 1251 (explaining that certain evidence requested to undergo DNA testing had been touched by several others and therefore, DNA testing would not produce exculpatory results).

In the end, Wells's claims are based on no more than conjecture and speculation, and this Court has held this is insufficient to make a *prima facie* showing that DNA testing would produce exculpatory results that would establish his actual innocence of the murder. **See id.** The PCRA court properly denied Wells's motion for DNA testing of the windbreaker jacket, even if the jacket were available for such testing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2023